**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Patrick H. SCROGGINS, Jr.,
Defendant–Appellant.**

No. 90–3865.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 6, 1991.

Decided June 15, 1992.

Colin S. Bruce, Asst. U.S. Atty., Springfield, Ill. (argued), for plaintiff-appellee.

John H. Germeraad, Morse, Giganti & Appleton, Springfield, Ill. (argued), for defendant-appellant.

Before CUDAHY and FLAUM, Circuit Judges, and ROSZKOWSKI, Senior District Judge.*

ROSZKOWSKI, Senior District Judge.

On September 18, 1988, Defendant, Patrick H. Scroggins, Jr., was stopped by the Illinois State Police. Co–Defendant, Dana Morgan, was the driver of the car. Co–Defendant Dewey Morgan and Defendant Scroggins were in the back seat of the car. A search of the car revealed three stolen weapons: a .22 caliber rifle, a .357 handgun and a sawed-off shotgun.

Defendant was named in four counts of a five count indictment charging him with knowingly possessing a firearm as a felon and possessing an unregistered firearm. Two counts of the indictment were later dismissed pursuant to *Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960) on motion of the government. Defendant entered into a plea agreement with the government whereby Defendant pleaded guilty to possession of an unregistered firearm. In exchange, the charge of possession of a firearm while a convicted felon was dismissed.

During the sentencing of Co–Defendant Dana Morgan, the court inquired of the Assistant United States Attorney (hereinafter "AUSA") what he was going to recommend as a sentence for Defendant Scroggins who was scheduled to be sentenced later that day. The AUSA replied that a plea agreement was in effect with Defendant Scroggins. The AUSA did indicate, however, that there was a problem with Defendant Scroggins' sentence in relation to the mandatory minimum. The AUSA stated to the court that Defendant Scroggins had a juvenile conviction that would have triggered the mandatory minimum but the government did not know about the conviction at the time of the plea. Accordingly, the proper steps were not taken to enforce the mandatory minimum. Nevertheless, the AUSA indicated that he felt that he was bound by the plea agreement.

During Defendant Scroggins' sentencing hearing, the government presented the testimony of Special Agent Donald York of the Bureau of Alcohol, Tobacco and Firearms. Agent York testified that Co–Defendant Dewey Morgan had stated that the reason the three defendants were together in the car on the day of the arrest was that they were going to collect a drug debt. Agent York also testified that Defendant Scroggins possessed the sawed-off shotgun and Dewey and Dana Morgan possessed the other guns found in the vehicle. Finally, Agent York testified that the sawed-off shotgun was stolen and that Dewey Morgan admitted sawing off the shotgun.

One issue that needed to be resolved prior to Defendant's sentence being imposed was whether a driving under the influence (hereinafter "DUI") conviction could be counted for criminal history points. The State court case file of this conviction had apparently been destroyed and, as such, defense counsel argued that without the case file there was no way to determine whether Defendant had been advised of his rights, had knowingly waived all of his Constitutional rights and had knowingly entered a guilty plea. The district court overruled defense counsel's arguments and held that the DUI conviction would be used in determining Defendant's criminal history category.

The district court then departed upward from the guidelines and sentenced Defendant to 60 months incarceration. In sentencing Defendant, the court stated that it was departing upward because the guidelines did not reflect the seriousness of Defendant's ongoing criminal behavior. Defendant's criminal history included burgla-

---

* The Honorable Stanley J. Roszkowski, Senior District Judge for the Northern District of Illinois, is sitting by designation.

ry, theft, two armed robberies, armed violence, unlawful use of a weapon and unlawful possession of a weapon by a felon. In short, Defendant had seven felony convictions. Furthermore, the district court stated that Defendant's prior criminal history made him eligible to be sentenced as a career offender.

## I

The court notes at the outset that the government concedes that this case must be remanded for re-sentencing under *Burns v. United States*, — U.S. —, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). *Burns* held that before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the government, Federal Rule of Criminal Procedure 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling. The notice must specifically identify the ground on which the district court is contemplating an upward departure. *Id.*, 111 S.Ct. at 2187.

The government concedes that Defendant Scroggins was not given the proper notification to which he was entitled under Federal Rule of Criminal Procedure 32 of the district court's intention to make an upward departure from the guidelines. Accordingly, this cause of action is remanded for resentencing. As a result of the remand, this court will not consider the question of whether Defendant's sentence was reasonable. The court will, however, resolve other outstanding issues presented by this case to guide the district court upon resentencing.

## II

■ Defendant Scroggins objects to the use of his prior DUI conviction for enhancement purposes. Defendant argues that because the State court records were destroyed there is no way of telling whether Defendant was properly advised of his rights, had knowingly waived all of his Constitutional rights and had knowingly entered his guilty plea. The court rejects these arguments.

In *United States v. Dickerson*, 901 F.2d 579, 583 (7th Cir.1990), this court held that there is a strong presumption of regularity in State court proceedings. *Dickerson* involved the sentencing of a defendant who challenged the use of two prior Illinois convictions for sentence enhancement purposes. One conviction involved a guilty plea where a stenographic record of the guilty plea proceedings was never made due to the death of the stenographer who recorded the proceedings. The stenographer had a unique style of shorthand that other court reporters were unable to interpret and transcribe. The defendant challenged his second conviction on the grounds that the record was silent as to whether he was informed of his privilege against self-incrimination, his right to a trial by jury and his right to confront his accusers.

■ The *Dickerson* court held that when no transcript of the court proceedings is available, an investigation of the custom, practice and law applicable to Illinois guilty pleas is performed in order to determine whether the plea was an intelligent and voluntary waiver of the defendant's rights. *Id.* at 583. Illinois Supreme Court Rule 402(a) specifically requires the district court to appropriately warn the defendant of the consequences of a guilty plea before accepting a plea of guilty. Rule 402(a) provides:

> The court shall not accept a plea of guilty without first, by addressing the defendant personally in open court, informing him of and determining that he understands ... that the defendant has a right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty[,] and ... that if he pleads guilty there will not be a trial of any kind so that by pleading guilty he waives the right to trial by jury and the right to be confronted with the witnesses against him.

When a defendant presents only conclusory challenges that lack both a factual and legal basis, however, the court and the

government is not under any duty to make a further inquiry into the constitutional validity of the prior conviction. *United States v. Hope*, 906 F.2d 254, 263 (7th Cir.1990).

Defendant Scroggins admitted to the probation officer that he had pleaded guilty to this offense. Furthermore, the computer data base showed that Defendant had, in fact, pleaded guilty and had received one year court supervision and paid a fine for this conviction. Court supervision is contemplated by the sentencing guidelines under Section 4A1.1(c) and Section 4A1.2(f). These sections provide that one point be added to a defendant's criminal history points for convictions ending in court supervision, a diversionary disposition.

Accordingly, the court finds that in light of all of the evidence, the presumption that Constitutionally regular procedures were utilized during Defendant Scroggins' DUI proceedings and Defendant Scroggins' failure to make any attempt to affirmatively present evidence demonstrating the Constitutional invalidity of his DUI guilty plea, we hold that the district court properly considered this conviction in its application of the sentencing enhancement provisions.

### III

As to Defendant's allegations that the AUSA, the court and the probation officer engaged in ex parte communications, the court notes that the AUSA's comments were in response to a question by the district court during a co-defendant's sentencing. The question related to information that was already in Defendant Scroggins' presentence report. Specifically, the presentence report has a section referring to the impact of the plea agreement on the sentence. The court, therefore, is not greatly concerned regarding these alleged ex parte communications.

### IV

█ The court is, however, more concerned about what appears, at first blush, to be a derogation of the commitment the government made in relation to Defendant Scroggins' plea agreement. This initial ap-

pearance of an apparent breach of the spirit of the agreement manifests itself in both the comments of the AUSA to the court during Co-defendant Dana Morgan's sentencing as well as the use of Agent York's testimony during Defendant Scroggins' sentencing hearing in aggravation.

Upon examination of the plea agreement entered into in this case, however, the court discovers that the agreement does not bind the United States to recommend any specific sentence within the guideline range, thus, allowing the government the freedom to recommend an upward departure from the range set with the sentencing guidelines. The plea agreement states specifically at ¶ 5:

> The defendant understands that at the time of sentencing the court will not be bound by any recommendation made by any party, and that the court will be free to impose whatever sentence it deems appropriate up to the statutory maximum.

The plea agreement was carried through as written, that Defendant would plead guilty to Count 3 which carried a sentence of up to 10 years imprisonment and/or a $250,-000 fine, plus $50 special assessment. As a result, the court finds that the government did not breach its agreement with Defendant by presenting testimony in aggravation and by recommending an upward departure from the guidelines.

Such a finding is consistent with Federal Rule of Criminal Procedure 11 wherein the procedures to be used for plea agreements are described. Rule 11(e)(1) states, generally, that the government and the defendant may engage in discussions with a view toward reaching an agreement whereby the defendant would enter a plea of guilty to a charged offense in exchange for the government moving for dismissal of another charge *or* making a recommendation for a particular sentence *or* agreeing that a specific sentence is appropriate. Absent a statement that the government agreed to recommend a particular sentence, the government in this case did not commit any breach of the plea agreement.

## V

The cause of action is hereby remanded to the district court for resentencing in line with this decision.