FILED
United States Court of Appeals
Tenth Circuit

August 20, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

DANIEL TRUJILLO,

        Defendant - Appellant.

No. 07-2233

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CR-06-1168-JCH)**

---

Richard Winterbottom, Assistant Federal Public Defender, (Stephen P. McCue, Federal Public Defender, and Margaret A. Katze, Assistant Federal Public Defender, on the briefs), Albuquerque, New Mexico, for Defendant - Appellant.

David N. Williams, Assistant United States Attorney, (Gregory J. Fouratt, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

---

Before **HARTZ**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **HOLMES**, Circuit Judge.

---

**HARTZ**, Circuit Judge.

---

      Daniel Trujillo was indicted in the United States District Court for the

District of New Mexico on two counts of being a felon in possession of firearms

and ammunition. *See* 18 U.S.C. § 922(g)(1), 924(a)(2). He pleaded guilty to one count in accordance with a plea agreement, under which the government agreed to dismiss the other count and he agreed not to appeal his sentence. The court sentenced him to 46 months' imprisonment. On appeal Mr. Trujillo raises several challenges to his sentence. To overcome his agreement not to appeal the sentence, he contends that the government breached the plea agreement by agreeing with the probation office's presentence report (PSR) that conduct related to the dismissed count could be considered in calculating his base-offense level under the United States Sentencing Guidelines (USSG). Exercising jurisdiction under 28 U.S.C. § 1291, we hold that the government complied with the plea agreement, and we dismiss Mr. Trujillo's appeal.

## I.     BACKGROUND

We take the background facts from the PSR. The dismissed count was based on events occurring on February 12, 2006. A parole officer with the New Mexico Corrections Department searched the apartment of Mirella Zamarrippa in Rio Rancho, New Mexico. The officer discovered a Norinco rifle under the mattress of the bed in the master bedroom, a Ravens Arms .25 caliber pistol in a closet, and ammunition in a drawer filled with men's briefs. A special agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was called to the scene, and Ms. Zamarrippa agreed to cooperate. She said that she had been living in the apartment with Mr. Trujillo, that the firearms belonged to him, and that she

had told him to take the firearms out of the apartment because she knew their presence to be a violation of her probation. The officers seized photographs in the apartment that showed Mr. Trujillo and others trafficking and using narcotic substances and firearms. The ATF later determined that Mr. Trujillo had been convicted in New Mexico state court of aggravated assault with a deadly weapon, a felony.

The second count was based on events on August 19, 2006. In response to a disturbance call, officers from the Albuquerque Police Department went to an apartment complex, observed Mr. Trujillo yelling at a woman, and arrested him. They removed from his person a Raven Arms .25 caliber pistol, ammunition, and marijuana.

Mr. Trujillo was indicted on the two counts on January 24, 2007. On March 26 he reached a plea agreement with the government and pleaded guilty to Count II. In exchange, the government promised that it would recommend a three-level reduction for acceptance of responsibility, *see* USSG 3E1.1, and a sentence at the low end of the applicable Guidelines sentencing range.[1] The

_____

[1]The promise appears in Paragraph 9 of the agreement:
        9. The United States and the defendant stipulate as follows:
                a. As of the date of this agreement, the Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. Consequently, pursuant to U.S.S.G. § 3E1.1, so long as the Defendant continues to accept responsibility for his or her criminal conduct, the Defendant
                                                                (continued...)

agreement acknowledged, however, that the court would not be bound by these

recommendations:

> The Defendant understands that the above stipulations are not
> binding on the Court and that whether the Court accepts these
> stipulations is a matter solely within the discretion of the Court after
> it has reviewed the presentence report.  Further, the Defendant
> understands that the Court may choose to deviate from the advisory
> guideline sentence.  The Defendant understands that if the Court does
> not accept any one or more of the above stipulations and reaches an
> advisory guideline sentence different than expected by the
> Defendant, or if the Court deviates from the advisory guideline
> range, the Defendant will not seek to withdraw the plea of guilty.  In
> other words, regardless of any stipulations the parties may enter into,
> the Defendant's final sentence is solely within the discretion of the
> Court.

R. Vol. I, Doc. 25 at 5.

Under the plea agreement the government also promised that it would

dismiss Count I and would not bring additional charges against Mr. Trujillo

arising from conduct then known by the U.S. Attorney.[2]  But the government

---

[1](...continued)
> is entitled to a reduction of three levels from the base
> offense level as calculated under the sentencing guidelines.
> This reduction depends on the Defendant personally
> providing to the United States Probation officer who
> prepares the presentence report in this case an appropriate
> oral and written statement in which the Defendant clearly
> establishes his entitlement to this reduction.
> > b.  The United States at sentencing will recommend
> the lower end of the imprisonment range of the appropriate
> advisory guideline.

R. Vol. 1, Doc. 25 at 5.

[2]These promises appear in Paragraph 14 of the agreement:
> 14.  Provided that the defendant fulfills his obligations as set

(continued...)

"reserve[d] the right to make known to the United States Probation Office, for inclusion in the [PSR] . . . , any information that the United States believes may be helpful to the Court." *Id*. at 3.

In addition to agreeing to plead guilty to Count II, Mr. Trujillo waived his right to appeal his sentence. The agreement contained the following waiver provision:

### WAIVER OF APPEAL RIGHTS

13. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging that, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

*Id*. at 6–7.

After Mr. Trujillo pleaded guilty, the probation office prepared the PSR. Because he had a prior conviction for a crime of violence (the aggravated-assault

---

[2](...continued)
out above, the United States agrees that:
a. The United States will move at the time of sentencing to dismiss Count 1 of the Indictment: 18 U.S.C. §§ 922(g)(1) and 924(a)(2), that being Felon in Possession of Firearms and Ammunition on or about the 17th day of February, 2006.
[b]. The United States will not bring additional charges against the defendant arising out of the defendant's conduct now known to the United States Attorney's Office for the District of New Mexico.
R. Vol. I, D. 25 at 7.

conviction), it assigned him a base-offense level of 20. *See* USSG § 2K2.1(a)(4)(A). The PSR increased his offense level by 2 because the offenses charged involved the possession of three firearms (including the Norinco rifle and Raven Arms .25 caliber pistol referenced in Count I, as well as the Raven Arms .25 caliber pistol charged in Count II). *See id.* § 2K2.1(b)(1)(A) (specific offense characteristic based on number of firearms involved); *id.* § 1B1.3 (relevant conduct is to be considered in determining specific offense characteristics). It added another 2 points because the Norinco rifle had been stolen, *see id.* § 2K2.1(b)(4)(A), and then reduced the offense level by 3 for acceptance of responsibility, *see id.* § 3E1.1(a), leading to a total offense level of 21. Mr. Trujillo's aggravated-assault conviction produced three criminal-history points, *see id.* § 4A1.1(a), and he received an additional two points because the offense to which he pleaded guilty had occurred less than two years after his release from state custody, *see id.* § 4A1.1(e). His five criminal-history points placed him in criminal-history category III. As a result, his Guidelines sentencing range was 46 to 57 months in prison.

Mr. Trujillo's response to the PSR objected to consideration of conduct related to Count I in calculating his base-offense level. He contended:

> The government and Mr. Trujillo agreed to a plea agreement whereby Mr. Trujillo would plead guilty to Count II of the indictment and the government would dismiss Count I of the indictment. Mr. Trujillo agreed to enter into the above plea with the government because there was a benefit to him—the dismissal of Count I. As he was

receiving a benefit he agreed to waive his constitutional right to appeal the sentence imposed. If Mr. Trujillo was not to have received a benefit by entering into a plea agreement with the government he would not have done so.

R. Vol. I, Doc. 32 at 1. In addition, he challenged the relatedness of the two counts on the ground that "[e]ach of the counts in the indictment involve incidents that occurred on completely different dates, at completely different locations and involved completely different firearms. There was no common scheme or plan and no course of conduct. The counts are completely unrelated." *Id*. at 2. He also pointed out that "[Ms. Zamarrippa] ha[d] ple[aded] guilty to [possession of the two firearms specified in Count I] and she admitted that it was she who possessed those weapons." *Id*.

The government did not file a response to Mr. Trujillo's objection. But the probation office's response explained why it applied the enhancements arising from his Count I offense:

> [A]ccording to the federal Sentencing Guidelines handbook, text and analysis, 2007 edition, the enhancement for number of firearms includes additional firearms, and is relevant conduct to the defendant's offense of being a felon in possession of a firearm. This includes conduct underlying a vacated conviction. In order for the Court to consider the firearms in vacated counts to increase the defendant's sentence under 2K2.1, the Court needs find only a preponderance of the evidence that the defendant possessed the firearms. The guns need not be recovered in criminal activity for the enhancement to apply. In this case the defendant has a history of possessing firearms. The rifle was found between the mattresses of the adult bed in the master bedroom of the house. The .25 pistol was found in a closet along with nine Winchester 12 gauge cartridge ammunition and one Hornanday .40 S & W caliber cartridge

ammunition and a firearm part. The ammunition was found in a blue plastic bag in a drawer filled with men's boxer briefs. The agents also seized several photographs as evidence showing Trujillo and [others] trafficking and using narcotic substances and firearms. The weapon possessed by Trujillo on August 19, 2006, is the same model and caliber as the one found at his residence on February 17, 2006.

R. Vol. II, Add. at 1.

At the sentencing hearing on August 13, 2007, Mr. Trujillo renewed his objections to the PSR. Defense counsel stated:

Mr. Trujillo was originally charged in a two-count indictment through plea negotiations with the government. He was willing to give up some very valuable rights, for example, his right to appeal, because the government was willing to, at the time of sentencing, move to dismiss one of the counts, and he pled guilty to the other count. Based on the one count that he pled guilty to, the bottom of the sentencing range would be 30 months. Based on probation officer's assessment of factors related only to the be [sic] dismissed counts, his bottom of the sentencing range is now 46 months. So, in other words, half again of what the sentence would be for the count that he applied for. So even if relevant conduct were an issue here, I will in a minute argue that I don't think that is, that the principle that is applied in this situation, even if that were, that would be patently unfair. That would really be the dog, the tail wagging the dog, that his sentence would be increased 50 percent for an otherwise acquitted or dismissed conduct.

R. Vol. IV at 2–3. When asked by the court for his views, the prosecutor said that he "concur[red] with the [PSR] and ha[d] no objections to the report." *Id*. at 5.

He then stated that he had not heard before the hearing that Ms. Zamarrippa had pleaded guilty to possessing the firearms, but added that

if you look at the facts and circumstances surrounding that first count, the defendant was residing and living with her at the time those two guns were found. And, you know, certainly there is a

connection and nexus from that perspective.  And we think the guidelines and the analysis in the report are accurate.

*Id.* at 6.

Counsel for Mr. Trujillo responded that the prosecutor was "dangerously close to a Santobello violation when he advocates for something that goes against the spirit of the plea agreement." *Id*. at 7; *see Santobello v. New York*, 404 U.S. 257, 262 (1971) (when plea bargain induces guilty plea, government must fulfill its promises under the bargain).  She went on to say:

> [B]y the spirit of the plea agreement, what I mean is that the government negotiated with Mr. Trujillo for him to give up valuable constitutional rights in exchange for them dismissing one of the counts.  Arguing in favor of what I think is, in fact, incorrect relevant conduct argument, but arguing in support of that seems to me to be going against the spirit of the plea agreement in that the dismissal of that count is meaningless if it ends up being the cause of a 50 percent increase in his sentence.

R. Vol. IV at 8.  The prosecutor stood his ground:

> The plea agreement was that we agreed to the reduction of three levels, and we would argue the lower end.  We did not agree that the analysis of relevant conduct would not apply.  So if counsel is implying that we're somehow going against the spirit of the agreement, she's wrong, because we have honored that.  We do intend to dismiss Count I, and I'll move for that right now.  But, and that's the extent of the plea agreement as indicated. . . .  I don't think her comments are appropriate since we have honored this agreement, we continue to honor it.  She's trying to make this point about relevant conduct not applying.  At no time did we ever agree that that would not be part of the analysis by Probation.

*Id*. at 7–8.

The district court overruled Mr. Trujillo's objection regarding relevant conduct, explaining, "[I]t appears to me that the advisory guideline calculations and applications were properly considered, so it looks to me like the relevant conduct would include possession of the, of the guns that were referenced in Count I." *Id*. at 11–12. The court adopted the findings in the PSR and sentenced Mr. Trujillo to 46 months' imprisonment.

## II. DISCUSSION

"Because an appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement, we must first address whether the Government's conduct during sentencing constituted a breach." *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008) (citation omitted). We review de novo whether the government has breached a plea agreement. *See United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007). In interpreting a plea agreement, we rely on general contract principles and construe any ambiguities against the government as the drafter of the agreement. *See United States v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007). "We thus look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea." *VanDam*, 493 F.3d at 1199.

Mr. Trujillo contends that he "reasonably expected that the allegations in [Count I], if dismissed, would not affect his sentence," Aplt. Br. at 31, and that

the government therefore breached the agreement by urging the court to enhance

his sentence based on the conduct underlying that count. We disagree and hold

that the government did not breach the agreement.

It was unreasonable for Mr. Trujillo, or his attorney, to believe that

dismissal of Count I would preclude consideration of the facts underlying that

charge when the district court computed his offense level. The Sentencing

Guidelines specifically endorses such consideration:

> In the case of a plea agreement that includes the dismissal of any
> charges or an agreement not to pursue potential charges (Rule
> 11(c)(1)(A)), the court may accept the agreement if the court
> determines, for reasons stated on the record, that the remaining
> charges adequately reflect the seriousness of the actual offense
> behavior and that accepting the agreement will not undermine the
> statutory purposes of sentencing or the sentencing guidelines.
>
> However, *a plea agreement that includes the dismissal of a charge or
> a plea agreement not to pursue a potential charge shall not preclude
> the conduct underlying such charge from being considered under the
> provisions of § 1B1.3 (Relevant Conduct) in connection with the
> count(s) of which the defendant is convicted.*

USSG § 6B1.2(a) (emphasis added). The commentary to § 6B1.2(a) further

explains that a plea agreement to dismiss a charge cannot prevent the court from

considering the underlying conduct as relevant conduct when computing the

offense level:

> The second paragraph of subsection (a) provides that a plea
> agreement that includes the dismissal of a charge . . . shall not
> prevent the conduct underlying that charge from being considered
> under the provisions of § 1B1.3 (Relevant Conduct) in connection
> with the count(s) of which the defendant is convicted. *This*

*paragraph prevents a plea agreement from restricting consideration of conduct that is within the scope of § 1B1.3* (Relevant Conduct) in respect to the count(s) of which the defendant is convicted; it does not in any way expand or modify the scope of § 1B1.3 (Relevant Conduct).

(emphasis added).  *See United States v. McGee*, 7 F.3d 1496, 1498–99 (10th Cir. 1993) (court may consider conduct underlying dismissed counts when imposing sentence).

Moreover, nothing in the plea agreement precluded the government from advocating for an offense-level enhancement based on conduct related to the dismissed count.  There is no inconsistency between promising to recommend a sentence at the low end of the Guidelines sentencing range and also arguing in favor of a Guidelines sentencing range greater than what the defendant desires. *Cf.  United States v. Villa-Vazquez*, No. 07-3160, slip op. at 15–18 (10th Cir. Aug. 20, 2008) (government breached agreement to recommend low-end sentence when it recommended an upward departure and variance; agreement to recommend low-end sentence implies that government will not seek departure or variance from sentencing range calculated under Guidelines).

Given that a plea agreement cannot preclude the court from considering the facts underlying a dismissed count and that the government made no affirmative promise not to support an offense-level enhancement based on the conduct underlying that count, Mr. Trujillo could not reasonably have understood that the agreement precluded the government from recommending such an enhancement.

*Cf. United States v. Scroggins*, 965 F.2d 480, 483 (7th Cir. 1992) (no breach when prosecutor advocated upward departure based in part on conduct underlying dismissed charge); *United States v. Fox*, 889 F.2d 357, 363 (1st Cir. 1989) (government would not have breached plea agreement by providing information regarding offenses that it promised not to prosecute); 5 Wayne R. LaFave, Jerold H. Israel, Nancy King, & Orin S. Kerr, *Criminal Procedure* § 21.2(d), at 626–27 & 627 n.211 (3d ed. 2007) ("[D]efendants sometimes claim a violation of the *Santobello* rule when either the court or parole agency takes into account an aspect of defendant's conduct encompassed within a charge dropped pursuant to a plea bargain. . . . In these and like circumstances (including when dismissed counts are used to determine the offense level under the federal sentencing guidelines), courts have consistently held that there has been no breaking of the plea bargain." (footnotes omitted)). The government performed its promises. Accordingly, we conclude that it did not breach the plea agreement.

Mr. Trujillo also argues that even if the government did not breach the plea agreement, it cannot enforce his appeal waiver because it did not seek enforcement until its merits brief, rather than filing a timely prebriefing motion. We reject the argument.

We permit certain dispositive motions to be filed before merits briefing as a convenience to a movant. If the movant is successful, it will avoid having to brief the merits issues that would otherwise be raised by the opposing party. To

-13-

prevent such motions from interfering with the orderly and prompt disposition of appeals, we impose strict time requirements on such motions. But failure to file a timely motion does not foreclose raising the issue in the merits brief.

In particular, Tenth Circuit Rule 27.2(A)(1)(d) permits the government to file a motion to enforce an appeal waiver, provided that the motion is timely, *see* Fed. R. App. P. Rule 27.2(A)(3)(b) (2007), and attached to the motion are the plea agreement and the transcripts of the plea hearing and sentencing hearing, *see id.* Rule 27.2(A)(2)(b). The rule explicitly states, however, that "[f]ailure to file a motion does not foreclose a party from raising the issue in a merits brief." *Id.* Rule 27.2(A)(3). Mr. Trujillo's reliance on two of this court's unpublished cases is misplaced. Neither precludes the government from raising appellate waiver in its merits brief. Our published law clearly permits the practice. *See United States v. Ibarra-Coronel*, 517 F.3d 1218, 1221 n.3 (10th Cir. 2008) (government is not precluded from raising waiver in its response brief).

## III.    CONCLUSION

Because we hold that Mr. Trujillo's waiver of his appellate rights is enforceable, we DISMISS the appeal and do not reach his substantive claims.