**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 13, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

JANNICE MCLAIN SCHMIDT,

     Defendant-Appellant.

No. 08-1136

(D.C. No. 04-CR-103-REB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **BALDOCK,** and **TYMKOVICH**, Circuit Judges.

---

As a consequence of her participation in a ponzi scheme which cost defrauded investors upwards of $50 million, Defendant Jannice McLain Schmidt pled guilty to two counts of Securities Fraud in violation of 15 U.S.C. §§ 77q(a) and 77x. The district court sentenced her to 60 months imprisonment on the first count of a superceding information, and 48 months imprisonment on the second count, to be served consecutively. To make a long story short, the parties from the outset of the sentencing process have wrangled over the amount of loss properly attributable to Defendant. Prior to the first sentencing hearing, the Government supplied a loss

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

figure attributable to Defendant of $25,656,958.96. Defendant meanwhile initially calculated the loss due to her participation in the scheme at $11,384,617.00. The Presentence Investigation Report (PSIR) set the loss attributable to Defendant at $27,276,442.93. For a loss between $20 million and $50 million, the United States Sentencing Guidelines (U.S.S.G.) provide an offense level increase of 22. See U.S.S.G. § 2B1.1 Over Defendant's objection, the court at the first sentencing hearing accepted the PSIR's findings without independent inquiry, and concluded that a 22 offense level increase was appropriate. Based upon an adjusted offense level of 31 and a criminal history category of I, the advisory guidelines set Defendant's imprisonment range between 108–135 months. But because the statutory maximum sentence for the two offenses was five years each, the PSIR reduced the high end of the range to 120 months.

Following the district court's imposition of a 108 month sentence, Defendant appealed, arguing the district court did not comply with Fed. R. Crim. P. 32(i)(3)(B). Rule 32 requires that when a defendant alleges a factual inaccuracy in the PSIR, the district court may not simply refer back to the PSIR to defeat the objection. Defendant pointed out that the court failed to make a clear and independent ruling on the disputed amount of loss and instead merely adopted the factual findings and guideline applications of the PSIR. We agreed with Defendant and remanded for resentencing:

2

The evidence showed that Schmidt was originally recruited as a victim into the scheme, and only later became a participant. The plea agreement lacks detail concerning her participation in specific aspects of the scheme. Given her objection to the PSIR, the nature and extent of her participation were key factors to be resolved in determining the appropriate advisory Guideline range and her appropriate sentence.

United States v. Schmidt, 244 Fed. App'x 902, 907 (10th Cir. 2007) (unpublished).

On remand, the district court conducted a three day evidentiary hearing on the issue of loss, and the probation office prepared an addendum to the original PSIR. This time, both the Government and the PSIR estimated the loss attributable to Defendant at $24,709,954.02. See Gov't Exh. 4. Following the hearing, the court made independent findings on the record consistent with the PSIR, and resentenced Defendant to 108 months imprisonment. See Rec. vol. VI, at 17-21. Defendant again appeals, steadfastly disputing the amount of loss attributable to her.

Under the Sentencing Guidelines (specifically the applicable 2002 version), a defendant for purposes of sentence calculation generally may be held responsible for "relevant conduct," *i.e.*, conduct "that occurred during the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). Such conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willingly caused by the defendant." Id. § 1B1.3(a)(1)(A). In the event of "jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged

3

as a conspiracy)" a defendant also may be held responsible for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Id. § 1B1.3(a)(1)(B).

Defendant first argues (as she did in the district court) that application of U.S.S.G. § 1B1.3(a)(1) is restricted per the terms of her plea agreement to that time period beginning in the spring of 2003—that period encompassing the fraudulent misconduct charged in the second count of the superceding information. Defendant asserts the Government breached the plea agreement when it insisted at sentencing that the time period of Defendant's relevant conduct commenced in the winter of 2002—that period encompassing the fraudulent misconduct charged in the first count of the superceding information. We review de novo the legal question of whether the Government breached the plea agreement in this case. See United States v. Trujillo, 537 F.3d 1195, 1200 (10th Cir. 2008). We look to the language of the agreement as a whole to ascertain both the nature of the Government's promise and Defendant's reasonable understanding of that promise. Id.

Applying this standard, we need not detail Defendant's argument. Suffice to say we have carefully reviewed the record, in particular the plea agreement, and arguments presented (written and oral), and conclude the district court interpreted the plea agreement consistent with the applicable law, thereby properly rejecting Defendant's claim of breach. Where the district court accurately analyzes an issue and articulates a cogent rationale, it serves no useful purpose for us to write at

4

length.  See Metro. Life Ins. Co. v. Zaldivar, 413 F.3d 119, 120 (1st Cir. 2005) (per Baldock, J.).  Thus, we reject Defendant's first argument substantially for the reasons set forth in the district court's written order which ably explains why the Government did not breach the plea agreement.  United States v. Schmidt, No. 04-CR-00103-REB-05, Order Denying Defendant's Oral Motion to Preclude Breach of the Plea Agreement (D. Colo., Feb. 13, 2008).  We add only that ¶ 12 of the agreement, contained in a section entitled "Stipulation of Factual Basis and *Facts Relevant to Sentencing*" (emphasis added), expressly states "[t]he parties agree that the government's evidence would show that the date on which conduct relevant to the offense (§ 1B1.3) began is approximately the fall of 2001."  Defendant fails to provide any persuasive explanation as to why we, considering the plea agreement as a whole, should deem facts commencing around that period as inconsequential to the determination of her relevant conduct under U.S.S.G. § 1B1.3.

Defendant's second argument posits that the district court, in calculating the amount of loss attributable to her, relied upon erroneous findings of fact to conclude "the defendant was engaged in jointly undertaken criminal activity, involving the fraudulent solicitation of investments from January 11, 2002, the date of her conviction in Count 1 of the Superceding Information, through mid-2004."[1]  Rec.

---

[1] Defendant's third and final argument, that her sentence is procedurally unreasonable, is based upon the proposition that the district court relied on clearly erroneous factual findings in calculating her guideline range.  In other words,
(continued...)

5

vol. VI, at 17. Rather, Defendant asserts she had no understanding of the fraudulent scheme prior to the spring of 2003 as evidenced by the fact she was investing her own money in the illicit enterprise up to that time. The district court's determination of "relevant conduct" is a factual finding subject to a preponderance of the evidence standard, and clear error review. United States v. Zapata, 546 F.3d 1179, 1192 (10th Cir. 2008). To constitute clear error, the finding must be "simply not plausible or permissible in light of the entire record on appeal." Id. (internal quotations omitted).

Having carefully reviewed the transcript of the sentencing hearing in this case, we have little difficulty sustaining as plausible and permissible the district court's underlying findings supporting its determination regarding Defendant's knowledge of and willing participation in the fraudulent scheme from January 2002. Based upon the testimonial and documentary evidence presented, the court justifiably found Defendant solicited investments from numerous investors from January 11, 2002 forward in cooperation with her cohort Charles Lewis without ever disclosing the material fact of Lewis' prior felony conviction. Equally as damaging to her cause was evidence from which the district court could properly infer that from March 2002, Defendant knew of a Nebraska cease and desist order regarding the

[1](...continued)
Defendant simply attacks the court's factual findings regarding her involvement in the scheme from a different angle. Because such argument is subsumed within her ill-fated second argument, we need not address it further. See United States v. Zapata, 546 F.3d 1179, 1192-93 (10th Cir. 2008).

6

"investments" she was touting. She sought to avoid the impact of that order by directing Nebraska investors to use her Colorado post office box as their address and misrepresenting the nature of the Nebraska regulatory proceedings to investors. That same month, Defendant was present at a business meeting during which her husband, Norman Schmidt, stated "he had withdrawn money from a non-depleting account and used it for other purposes." Rec. vol. IV, at 114. The court could properly infer that Defendant was aware of the fraudulent activities associated with the scheme by her attendance at this meeting as well as subsequent sales meetings and social events where the schemers gathered. The court's finding of relevant conduct further rests on evidence from which it could infer that Defendant, through her role as bookkeeper and subsequently through her role as sole signatory on two purportedly "non-depleting" accounts, understood, in the words of the district court, "that investors' money was not being deposited into non-depleting accounts, that no profits were being generated from any trading activity, and that payments to investors [including herself] were funded by deposits from other investors." Rec. vol. VI, at 19. As we noted in our prior opinion, Defendant, to be sure, was recruited into the scheme as a victim. But the record belies any conclusion that the district court committed clear error in concluding that things changed in January 2002. The factual arguments that Defendant makes on appeal relating to her knowledge of and participation in the scheme were most emphatically for the fact-finder.

7

Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court,


Bobby R. Baldock
United States Circuit Judge