FILED
United States Court of Appeals
Tenth Circuit

May 13, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JUAN MATA-SOTO,

      Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,

      Respondent - Appellee.

No. 13-3332
(D.C. No. 2:08-CR-20160-KHV-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **ANDERSON** and **BRORBY**, Senior Judges.


After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination
of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is,
therefore, submitted without oral argument.

Juan Mata-Soto, a federal prisoner, appeals the district court's denial of his

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

petition for relief based on a writ of error audita querela and a writ of coram nobis. We have jurisdiction under 28 U.S.C. § 1291 and dismiss this appeal.

## I. BACKGROUND

On March 26, 2009, a grand jury returned a second superseding indictment against Mata-Soto and seven co-defendants. Mata-Soto was charged in Counts 1, 5, 6, 8, and 9. In a plea agreement, Mata-Soto agreed to plead guilty to Count 1 of the second superseding indictment, and the government agreed to dismiss the remaining counts against Mata-Soto. The government agreed to recommend a sentence at the bottom of the guideline range and not to request a departure above the guideline range, provided Mata-Soto did not request a downward departure. The plea agreement stated that the statutory maximum was life in prison and that the sentence would be determined by the district court, in accordance with the sentencing guidelines. The agreement also contained a waiver of Mata-Soto's appellate rights:

> 13. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence

2

or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2) and a motion brought under Fed. Rule of Civ. Pro [sic] 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a).

R. Vol. I at 37-38. The plea agreement stated the defendant understood it, was entering into it voluntarily, and that the agreement "embodie[d] each and every term of the agreement between the parties." Id. at 39.

On April 13, 2009, Mata-Soto entered his plea of guilty to Count 1 of the second superseding indictment, conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 21 U.S.C. § 846. At the plea hearing, the district court conducted a thorough plea colloquy by communicating with Mata-Soto through an interpreter. The court verified that Mata-Soto was competent, was not under the influence of any drugs or alcohol, and had the opportunity to discuss with his attorney the charges against him, his rights if he proceeded to trial, and the consequences of pleading. Mata-Soto affirmed that the second superseding

3

indictment had been translated for him. The court asked, "Do you realize that if the Court accepts your guilty plea, I will sentence you to at least ten years but possibly up to life in prison?" Supp. R. Vol. I at 14. Mata-Soto said yes. Id. After Mata-Soto pleaded guilty, the court asked if he understood he had a right to plead not guilty. Mata-Soto answered yes. The court listed Mata-Soto's rights at a trial, asked if he understood those rights, and asked if Mata-Soto understood that pleading guilty would waive his right to a trial. Mata-Soto answered yes to all these questions.

The court explained the sentencing process and stated that "until we're completely through that process, no one is in a position to tell you for certain what kind of sentence you're actually looking at under the sentencing guidelines." Id. at 21-24. The court asked, "do you realize that I can give you a sentence which is either higher or lower than what the sentencing guidelines call for?" Id. at 26. Mata-Soto replied yes. Id. The court verified that Mata-Soto understood the terms of the plea agreement, including the waiver of his appellate rights. The court asked Mata-Soto if he agreed with the facts recounted in the plea agreement, and he affirmed they were accurate. The court asked if Mata-Soto was mentally competent when he committed his crime, and after conferring with his attorney to clarify the question, he stated he was competent and did not have any mental problems. Id. at 37-38. The court accepted Mata-Soto's plea as knowing and voluntary.

4

The probation office prepared a presentence report ("PSR"). The PSR estimated Mata-Soto was responsible for over 78 kilograms of methamphetamine. R. Vol. II at 19-20. Based on this quantity, Mata-Soto's base offense level was 38. The PSR recommended applying several enhancements, resulting in a final offense level of 45. With a criminal history category of I, Mata-Soto's guideline range was life. Id. at 21-22. At the sentencing hearing on December 18, 2009, the district court applied an additional enhancement and sentenced Mata-Soto to life in prison. Supp. R. Vol. I at 42, 80.[1]

On December 4, 2013, Mata-Soto filed a pro se "Petition for Writ of Error Audita Querela to Invalidate Judgement [sic] for Breach of Plea." R. Vol. I at 45. The petition stated it was "Not a Motion Pursuant to Title 28 U.S.C. § 2255." Id. Mata-Soto argued that he had a newly recognized defense and sought relief "by Writ of Error Audita Querela, and Writ of Coram Nobis." Id. The district court rejected Mata-Soto's petition, holding that the writ of audita querela was not available to Mata-Soto when his claims could have been presented under § 2255, that the writ of coram nobis was inapplicable because Mata-Soto was still in custody, and also that petition for a writ of coram nobis was barred by Mata-Soto's waiver of appellate rights.

---

[1] Although this additional enhancement resulted in an offense level of 47, the sentencing guidelines treat any offense level above 43 as if it were 43, at which the guideline range is life imprisonment. U.S.S.G. Sentencing Table, Ch. 5, Pt. A, Application Note 2.

**II. ANALYSIS**

The government's response brief requests we dismiss this appeal because it falls within the scope of Mata-Soto's appellate waiver. "Whether an issue is within the scope of an appellate waiver is a legal question that this court reviews de novo." United States v. Salas-Garcia, 698 F.3d 1242, 1253-54 (10th Cir. 2012). We determine whether to enforce a waiver of appellate rights by considering: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice as we define herein." United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004).

The first prong of Hahn concerns the scope of the appellate waiver. "In determining a waiver's scope, we will strictly construe appeal waivers and any ambiguities in these agreements will be read against the Government and in favor of a defendant's appellate rights." Id. (alterations and quotations omitted). The waiver in Mata-Soto's plea agreement included "*any right* to appeal or collaterally attack *any matter* in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release." R. Vol. I at 37 (emphasis added). Even narrowly construed, this language is quite broad. The only exceptions to the waiver are an above-guideline sentence or a § 2255 motion under the exception

6

recognized by <u>United States v. Cockerham</u>, 237 F.3d 1179, 1187 (10th Cir. 2001). R. Vol. I at 37-38. <u>Cockerham</u> held that "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver." 237 F.3d at 1187. However, "[c]ollateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable." <u>Id.</u>

On appeal, Mata-Soto has not argued that his plea was not knowing and voluntary *because of* his attorney's ineffective assistance of counsel. His opening brief lists two issues. Issue one regards his plea agreement, and his argument relates to the government's breach of that agreement and his "new recognized defense," which remains unspecified. Appellant's Br. at 3.[2] His second issue, titled ineffective assistance of counsel, alleges that <u>Alleyne v. United States</u>, 133 S.Ct. 2151 (2013), requires all elements "must be presented by the indictment or [t]he plea." <u>Id.</u> He does not explain which elements were missing from the indictment or the plea, how his attorney was ineffective, or how the missing

---

[2] Of course, the government's breach of a plea agreement will invalidate an appellate waiver. <u>United States v. Trujillo</u>, 537 F.3d 1195, 1200 (10th Cir. 2008). However, Mata-Soto has merely stated that the government breached the agreement. In his opening brief, he has given no argument as to how the government breached the agreement and failed to provide any facts from which that conclusion could be drawn. Therefore, this argument is waived. <u>United States v. Cooper</u>, 654 F.3d 1104, 1128 (10th Cir. 2011).

element(s) impacted the knowing or voluntary nature of his plea. The issues Mata-Soto presents on appeal fall within the scope of the appellate waiver. And the fact that he initiated these claims by the filing of a petition seeking a writ of audita querela or coram nobis does not relieve him from the effect of his appellate waiver.[4]

Hahn's second prong considers whether the appellate waiver was knowing and voluntary. "When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to two factors. First, we examine whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily. Second, we look for an adequate Federal Rule of Criminal Procedure 11 colloquy." Hahn, 359 F.3d at 1325. "The defendant has the burden to prove that he did not knowingly and voluntarily enter into his plea agreement." Salas-Garcia, 698 F.3d at 1254. The plea agreement and plea colloquy both show that Mata-Soto's plea was knowing and voluntary.

---

[4] Assuming arguendo that these writs are not covered by this appellate waiver, we still could not grant the relief Mata-Soto seeks. "[A] prisoner may not challenge a sentence or conviction for which he is currently in custody through a writ of coram nobis." United States v. Torres, 282 F.3d 1241, 1245 (10th Cir. 2002). The "writ of audita querela is not available to a petitioner when other remedies exist, such as a motion to vacate sentence under 28 U.S.C. § 2255." Id. (quotations omitted). Mata-Soto has not argued that § 2255 is an inadequate or ineffective remedy. We have previously held that § 2255 is not inadequate or ineffective merely because it is barred by the statute of limitations. Sines v. Wilner, 609 F.3d 1070, 1073-74 (10th Cir. 2010). Similarly, a defendant's knowing and voluntary waiver of his § 2255 rights cannot be sufficient to render § 2255 inadequate or ineffective.

Although Mata-Soto argues to the contrary in his opening brief, the only specific issue he points to is that he did not know he would receive life in prison. Appellant's Br. at 2. However, the district court specifically informed Mata-Soto that the maximum penalty for Count 1 was life, that the court would determine his sentence, and that no one could guarantee his sentence prior to the sentencing hearing. Mata-Soto has failed to show his plea was not knowing and voluntary.

The final prong considers whether enforcing the waiver would constitute a miscarriage of justice. However, "[t]o constitute a miscarriage of justice, the waiver must fall in one of the following four categories: where the district court relied on an impermissible factor such as race, where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, where the sentence exceeds the statutory minimum, or where the waiver is otherwise unlawful." Salas-Garcia, 698 F.3d at 1255. None of these situations are present here.

We conclude that the appellate waiver should be enforced and thus DISMISS Mata-Soto's appeal. Mata-Soto's motion to proceed *in forma pauperis* on appeal is GRANTED.

Entered for the Court

Mary Beck Briscoe
Chief Judge

9