**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 7 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MAXIMO GUZMAN, JR.,

Defendant - Appellant.

No. 02-3070

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. 01-CR-40026-RDR)**

---

Jill M. Wichlens, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Eric F. Melgren, United States Attorney; Nancy Landis Caplinger, Assistant United States Attorney, on the brief), Topeka, Kansas, for Plaintiff-Appellee.

---

Before **KELLY** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **OBERDORFER** ,[*] District Judge.

---

**OBERDORFER**, District Judge.

---

[*]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

Maximo Guzman, Jr., the defendant, pursuant to a Plea Agreement, pled guilty to conspiracy to possess with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, and was sentenced to 80 months confinement. On appeal from that sentence, he first contends that the government breached the Plea Agreement by making recommendations to the court that were contrary to its promises under the Agreement. Although the government insists that Guzman had breached the Agreement before it made the disputed recommendations, Guzman maintains that the District Court had not made a finding to that effect. Second, Guzman argues that the District Court erroneously imposed an "obstruction of justice" enhancement pursuant to U.S.S.G. § 3C1.1, solely in reliance on a presentence report. We find that the District Court erred in handling both aspects of the sentencing. We therefore vacate the sentence, and remand the case for further proceedings consistent with this opinion.

**I.**

After an extended investigation, the government indicted Guzman for: (1) attempted obstruction of justice, in violation of 18 U.S.C. § 1503, and (2) conspiracy to possess with intent to distribute 100 kilograms or more of marijuana. The obstruction of justice count alleged that on March 22, 2001,

Guzman, while pretending to hold a firearm at his side, walked towards Timothy Howze, a government informant, and told Howze that he was "dead, snitch."

### A. The Plea Agreement and Guzman's Work with the Government

On November 13, 2001, Guzman and the government entered into the Plea Agreement. Guzman agreed to plead guilty to the marijuana conspiracy count, to provide a "full and truthful accounting and statement" of his knowledge relating to this case, to submit to and pass a polygraph examination if asked to do so, and to testify, if required, in the trials of other individuals involved. PA ¶¶ 1, 4-6. Guzman also waived his right to appeal any sentence within the Guidelines range, "except to the extent . . . that the court may depart upwards from the applicable sentencing guideline range . . . ." PA ¶ 3(A).

For its part, the government promised to bring no further criminal charges relating to the activities underlying the indictment. PA ¶ 7(A). In addition, the government promised to make several recommendations to the sentencing court, all of which were "contingent upon the defendant's continuing manifestation of acceptance of responsibility, and no attempts to obstruct justice, as defined by U.S.S.G. § 3C1.1." PA ¶ 7(B)-(E). These recommendations were: that Guzman receive a three-level adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1; that he *not* receive a two-level enhancement for obstruction of justice; and that he receive a sentence at the lower end of the appropriate

Guidelines range. PA ¶ 7(B)-(D). In addition, the government agreed to file a "substantial assistance" motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), contingent upon Guzman's "continuing cooperation as contemplated" by the Agreement. PA ¶ 7(E).

The Plea Agreement further provided that the government would be released from its obligations if Guzman were to "deny . . , or give conflicting statements as to his own involvement" in the offense, or "engage in additional criminal conduct." PA ¶ 7(B)-(E). If, in the opinion of the government, Guzman did "not comply fully, truthfully and honestly with the terms" of the Agreement, "the plea shall be withdrawn, the [government] shall be immediately released from its obligations . . . and shall reinstate prosecution as if no agreement had been reached." PA ¶ 14.

The government debriefed Guzman on the same day that he signed the Plea Agreement. According to the government, during the debriefing, Guzman minimized the amount of marijuana with which he himself was involved. Nevertheless, between the date of his plea and January 7, 2002, Guzman was in contact with government agents on the case, providing them with various pieces of information, all of which they accepted; none led to any arrests.

On January 6, 2002, Guzman told William Cox, a local police officer who was a neighbor of Guzman's sister, that Gary Hanus, a government investigator,

had asked Guzman to plant drugs in the residence of a suspect. The next day, Officer Cox told Hanus about Guzman's allegations. All cooperation between Guzman and law enforcement then ceased.

### B. The Sentencing Process

The Presentence Investigation Report ("PSIR") prepared by the probation officer recommended a Guidelines range of 70-87 months for Guzman, based on a criminal history category of III and a total offense level of 25. Although Guzman had not pled guilty to the obstruction of justice count based on the alleged intimidation incident involving Howze, the probation officer took it into account to add two points for "obstruction of justice," citing U.S.S.G. § 3C1.1.[1]

Guzman filed with the probation officer an objection to the obstruction of justice adjustment. He denied that the incident ever occurred, and underscored that at his detention hearing, his then-fiancee (now wife), Jamie Ovalle, corroborated this denial. PSIR at ¶ 125. In its response, the government agreed

---

[1] U.S.S.G. § 3C1.1 provides that:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing . . , and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any related conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

with the PSIR's description of the Howze incident, but added that "the government is bound by . . . paragraph 7C" of the Plea Agreement, which required it to oppose an obstruction of justice adjustment. *Id*. at ¶ 126. The probation officer nevertheless reiterated that the obstruction adjustment applied. *Id*. at ¶ 127-28.

### 1. Pre-Sentence Pleadings

On February 4, 2002, four days before the sentencing hearing, Guzman filed a motion to compel the government to file the § 5K1.1 substantial assistance motion contemplated in ¶ 7(E) of the Plea Agreement. Guzman argued that he had cooperated with law enforcement authorities, but that he was being denied the downward departure in retaliation for his refusal to plant drugs. Motion to Compel, at 2-3. Guzman contended, therefore, that the government's failure to file the downward departure motion was "unconstitutional," because it was "not rationally related to any government objective." *Id.* at 3.

The government response, filed that same day, denied the allegations regarding planting drugs, noting that it was not filing the § 5K1.1 motion because Guzman was dishonest during his debriefing, and had been uncooperative. Government's Response to Defendant's Motion to Compel, at ¶ 3. The government response stated that Guzman made his drug planting allegations only

after he was told that he had violated the Plea Agreement by refusing to cooperate. *Id.*

On February 4, 2002, Guzman also filed a Sentencing Memorandum in which he reiterated his objection to an obstruction of justice enhancement based on the alleged Howze intimidation incident. The Memorandum emphasized the government's promise in the Plea Agreement to oppose an obstruction of justice enhancement, and repeated Guzman's denial that the incident ever occurred. Sentencing Memorandum, at 1-2. Guzman also noted that given his objection, "the burden . . . shifts to the government to show by a preponderance of the evidence that such an enhancement should be assessed." *Id.* at 2. Since the Plea Agreement required the government to argue against such an enhancement, Guzman reasoned that his objection should be sustained. *Id.*

The government's February 6, 2002, response to the Sentencing Memorandum asserted that Guzman had violated the Plea Agreement by "not act[ing] in good faith with law enforcement since his plea of guilty" and by "ma[king] false criminal allegations against law enforcement personnel." Government's Response, at ¶ 5. The government argued that, given Guzman's breach of the Plea Agreement, he should *not* receive a reduction for acceptance of responsibility, *should* receive an enhancement for obstruction of justice, and should receive a sentence at the *upper* end of the guideline range. *Id.* The

government specifically recommended a sentence of 121 months, the highest possible sentence consistent with the government's recommendations. *Id*. at 4. It explained that in making these recommendations – which were contrary to its promises in the Plea Agreement – it was relying on Guzman's drug planting allegations, and his general unwillingness to cooperate. *Id*. at 3 n.1.

### 2. Sentencing Hearing

At the sentencing hearing on February 8, 2002, defense counsel requested a continuance, explaining he had received the government's response to the Sentencing Memorandum that same morning. The court denied the continuance, and proceeded to hear evidence on the defendant's objection to the PSIR, as well as on the motion to compel. The government called three witnesses who denied the drug planting allegations. The government presented no evidence regarding the alleged intimidation of Howze. Guzman testified that Hanus suggested that he plant drugs on the suspect; that the incident with Howze never occurred; and that he was truthful and complete during the debriefing that followed his guilty plea.

After the conclusion of the testimony, the District Court granted Guzman a three-point acceptance of responsibility adjustment, and sentenced him in the middle of the Guidelines range to 80 months. In a subsequent Memorandum and Order, the District Court imposed the two-point obstruction of justice enhancement based on the Howze intimidation incident, adopting the

recommendations in the PSIR. As for whether Guzman was truthful at his debriefing, the court observed that Guzman "gave what largely appears to be truthful information during the debriefing," and that "on the whole it appears that his information regarding the crime and relevant conduct was correct." Memorandum and Order, at 10.

The District Court also denied Guzman's motion to compel the government to file a § 5K1.1 motion. In doing so, the court found that Hanus had not asked Guzman to plant drugs, and that the government properly exercised its discretion when it refused to file the motion. The District Court observed:

> The court has expressly found that Investigator Hanus did not ask defendant to plant evidence at the target of a search warrant. There is no support for the defendant's claim other than his own self-serving testimony which appears to stem from the frustration of giving what he thought was substantial information to the police, but being told that it was insufficient to warrant a substantial assistance motion. Investigator Hanus has a reputation as an honest cop. His testimony was credible to the court.

Memorandum and Order, at 7. Although the District Court found Guzman's allegations to be false, the court never found or concluded the false allegations, or any other conduct by either Guzman or the government, to be a breach of the Plea Agreement.

Guzman, without objecting in the District Court that the government had breached the Plea Agreement, filed a Notice of Appeal on February 27, 2002.

-9-

## II.

As a preliminary matter, the government argues that Guzman waived his right to appeal pursuant to ¶ 3(A) of the Plea Agreement. This Circuit has held, however, that a waiver provision may be unenforceable if the government breaches the terms of the Plea Agreement. *See*, *e.g.*, *United States v. Greenhaw*, 30 Fed. Appx. 837, 838 (10th Cir. 2002); *United States v. Atterberry*, 144 F.3d 1299, 1301 n.3 (10th Cir. 1998). Accordingly, we turn to the merits of the appeal, which speak directly to the issue of breach.

### A.    Government's Breach of the Plea Agreement

On appeal, Guzman maintains that the government breached the Plea Agreement by recommending a sentence at the upper end of the guideline range, and by recommending a two-point upward adjustment for obstruction of justice. Whether a plea agreement has been violated is a question of law that the Court reviews *de novo*. *United States v. Peterson*, 225 F.3d 1167, 1170 (10th Cir. 2000), *cert. denied*, 531 U.S. 1131 (2001).[2]

---

[2] The defendant did not object in the District Court to the government's alleged breach of the Plea Agreement. That failure does not foreclose his right to appeal from the District Court's ruling with respect to it. *Peterson*, 225 F.3d at 1170.

General principles of contract law define the government's obligations under the agreement, looking to the express language and construing any ambiguities against the government as the drafter of the agreement. *United States v. Brye*, 146 F.3d 1207, 1210 (10th Cir. 1998). This Circuit uses a two-step analysis to determine whether the United States violated a plea agreement: the sentencing court should 1) examine the nature of the promise; and 2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea. *Id.*

Here, the government agreed to: (1) recommend a sentence at the low end of the guideline range (PA ¶ 7(D)), and (2) recommend that Guzman *not* receive a two-point obstruction of justice enhancement (PA ¶ 7(C)). Guzman's reasonable understanding at the time of the plea was that the government would make these recommendations as long as he complied with his own obligations under the Plea Agreement, which were to plead guilty, waive his appellate rights, cooperate in a complete and truthful debriefing, successfully complete a polygraph examination (if administered), provide other testimony if necessary, and continue to accept responsibility. Guzman also understood that he could not attempt to "obstruct justice" (as defined by U.S.S.G. § 3C1.1), deny or give conflicting statements as to his own involvement in the offense, or engage in additional criminal conduct.

The government did not perform several of its commitments in the Plea Agreement: in paragraphs 5 and 6 of its February 6 response to Guzman's

Sentencing Memorandum, the government affirmatively recommended a sentence at the upper end of the guideline range, as well as an enhancement for obstruction of justice. The government repeated these recommendations at sentencing. *See* Sentencing Hearing Transcript, at 105. The government claims, however, that it made these recommendations because Guzman had previously breached the Plea Agreement, thus vitiating the Agreement.

Under the law of this Circuit, "[i]f the pleadings reveal a factual dispute on the issue of breach [of a plea agreement], the district court must hold a hearing to resolve the factual issues." *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir. 1981). In other words, the government may not unilaterally declare a breach of a plea agreement; a court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement. *Id.; see also United States v. Ailsworth*, 927 F. Supp. 1438, 1445-46 (D. Kansas 1996).

The government argues that although the District Court judge did not make an express finding of breach, its findings at the sentencing hearing were equivalent to a determination that Guzman breached the Agreement. In a pre-sentence pleading, the government had argued that Guzman's drug planting allegations constituted an attempt to "obstruct justice." Government's Response to Defendant's Sentencing Memo, at ¶ 5 n.1. At sentencing, the District Court specifically found Guzman's allegations to be untrue. However, the District

Court did not make a determination that Guzman's false allegations about drug planting constituted "obstruction of justice," or even "criminal conduct," in violation of the Plea Agreement. The District Court did impose an upward adjustment for "obstruction of justice," basing it, not on what it had determined to be Guzman's false drug planting statement, but because of the alleged intimidation of Howze.[3] Despite the foregoing, the District Court granted a downward adjustment for acceptance of responsibility, which also was contingent upon the absence of any "obstruction of justice." *See* Plea Agreement at ¶ 7(B). Aside from this possible "obstruction of justice," the government also argued that Guzman breached the Plea Agreement by failing to cooperate. However, Guzman's "continuing cooperation" was a precondition only for the filing of a § 5K1.1 motion, and not for the government's other promises under the Agreement. *See* Plea Agreement at ¶ 7(E). The government has not alleged that Guzman failed to comply with any other obligation under the Agreement.[4]

In this case, the District Court permitted a unilateral declaration of breach, and entertained the unfavorable recommendations that followed, without holding

---

[3] It is noteworthy that Guzman conspicuously did not plead guilty to the Howze intimidation count in the indictment.

[4] Although the government has suggested that Guzman did not provide a "full and truthful" debriefing, the District Court specifically ruled that Guzman "gave what largely appears to be truthful information during the debriefing." Memorandum and Order, at 10.

the hearing or making the determination required by *Calabrese*.  Although the court heard witness testimony at sentencing, that testimony was not focused on the Plea Agreement.  More importantly, the court made no express finding that Guzman had breached the Plea Agreement before the government made its sentencing recommendations.

We find that the District Court erred by entertaining the government's recommendations with respect to the sentence without holding a hearing and making a determination as to whether the Plea Agreement had been breached by either Guzman or the government.

**B.      Obstruction of Justice Enhancement Under U.S.S.G. § 3C1.1**

Guzman also challenges the District Court's imposition of an obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1.  We review the District Court's factual findings as to the enhancement for clear error, and review *de novo* the court's interpretation of the sentencing guidelines.  *Hawley*, 93 F.3d at 686.

Guzman contends that the imposition of an obstruction of justice enhancement was erroneous because the court relied solely on hearsay statements and representations about police reports described second-hand in the PSIR.  It is undisputed that the government did not present any live witness or documentary evidence regarding the alleged intimidation incident at the sentencing hearing.  At the conclusion of the hearing, the District Court stated that "the court is going to

adopt the probation officer's report" with regard to the obstruction of justice enhancement. Sentencing Hearing Transcript, at 101. In its written Memorandum and Order, the District Court once again indicated its reliance on the PSIR, particularly its credibility assessments:

> Defendant did not plead guilty to Count 1 and denies that he threatened or tried to intimidate Howze. No evidence, however, was presented in support of his position. The presentence report writer reviewed the police reports and the information asserted in defendant's objection. He determined that the police reports were supported by an objective witness, Howze's employer. He found the reports more credible than the claims of defendant and defendant's wife. We believe a preponderance of the evidence supports the conclusion of the presentence report writer. Accordingly, the court denies the objection to the presentence report.

Memorandum and Order, at 9.

Under § 6A1.3(b) of the Sentencing Guidelines, the District Court is to "resolve disputed sentencing factors at a sentencing hearing in accordance with Rules 32(c)(1), Fed. R. Crim. P."[5] Rule 32(c)(1) requires the District Court to "make . . . a finding" as to disputed matters that will affect the sentence. The District Court's finding as to the disputed enhancement in this case clearly relied on the PSIR. However, this Circuit has repeatedly held that a District Court may not satisfy its obligation under Rule 32(c)(1) by simply adopting the presentence

---

[5] Rule 32(c)(1) provides that "For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing."

report as its finding. *United States v. Farnsworth*, 92 F.3d 1001, 1011 (10th Cir. 1996) (citing cases), *cert. denied*, 519 U.S. 1034 (1996).

In this case, the District Court judge effectively shifted the burden of proof to Guzman with regard to the enhancement. However, the government, and not the defendant, should bear that burden with respect to sentencing enhancements. *See United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990) (government has burden of proof as to guideline adjustments that increase a defendant's sentence). We therefore find that the imposition of an enhancement under § 3C1.1 was in error.

## C. Conclusion

The foregoing errors considered, we vacate the sentence and remand the case to the District Court for further proceedings after it has conducted a hearing as to whether either Guzman or the government breached the Plea Agreement and, if both, when. Guzman is entitled to such a hearing regardless of the degree to which the government's recommendations prejudiced the sentencing judge. *See Santobello v. New York*, 404 U.S. 257, 262-63 (1971).

On remand, the court should give the government an opportunity to further address with evidence and legal analysis: (1) with respect to the Plea Agreement, whether Guzman engaged in "obstruction of justice," "additional criminal

conduct,"[6] or other behavior in violation of the Agreement; and (2) with respect to the obstruction of justice enhancement, the facts about the alleged Howze incident. The District Court should be mindful that it has the discretion to consider any relevant evidence, even if it was not introduced in the initial sentencing proceedings, *see United States v. Keifer*, 198 F.3d 798, 801 (10th Cir. 1999)*,* but that, with respect to any enhancement, the government bears the burden of proof. *See Kirk*, 894 F.2d at 1164.

Obviously, if the court should determine that the false drug planting statement constitutes a violation of the Plea Agreement, there would be no occasion to address at a hearing, or make a determination as to whether the government's sentencing stance violated the Agreement. Indeed, barring waiver, the government might choose to reinstate prosecution. *See* Plea Agreement at ¶ 14. On the other hand, if the court should determine on remand that Guzman did not violate the Plea Agreement, it must determine whether the government's sentencing recommendations did. If the government did breach first, the District Court must decide whether Guzman should be resentenced under conditions where the government fulfills the promises it made in the Plea Agreement (*i.e.*, specific performance), or whether he should be allowed to withdraw his guilty plea. *Santobello*, 404 U.S. at 263; *Brye*, 146 F.3d at 1213.

---

[6] *See, e.g.*, Kans. Stat. Ann. § 21-4004 (criminal defamation).

## III.

For the reasons stated above, we vacate the sentence, and remand the case for proceedings consistent with this opinion.