**F I L E D**

**UNITED STATES COURT OF APPEALS**

**June 21, 2006**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JESUS DOMINGUEZ BELTRAN,

    Defendant-Appellant.

No. 05-8081

(D. Wyoming)

(D.C. No. 05-CR-69-ABJ)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

On June 6, 2005, Jesus Dominguez Beltran pleaded guilty to one count of conspiracy to traffic in methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The district court sentenced Mr. Beltran to 57 months'

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

imprisonment, 36 months' supervised release, and ordered him to pay a $500 fine. Mr. Beltran requested that his counsel appeal his sentence because the government had not filed a motion for substantial assistance. Mr. Beltran's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), requesting leave to withdraw as counsel. Counsel contends that Mr. Beltran's possible argument–that the government's refusal to file a motion for substantial assistance was unlawful–is frivolous. Counsel also finds any challenge to the reasonableness of Mr. Beltran's sentence to be without merit. Mr. Beltran filed a letter and reply brief in response to counsel's *Anders* brief, claiming that the government breached his plea agreement by not filing a substantial-assistance motion. We grant counsel's motion to withdraw and dismiss the appeal.

## I. BACKGROUND

On March 18, 2005, Mr. Beltran was indicted for conspiracy to possess with intent to distribute, and to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Two other co-defendants, Mandi Sakala Humphrey and Jose Luis Macias, were also indicted. On June 6, 2005, Mr. Beltran pleaded guilty to the one count charged, and he stipulated in a plea agreement that the most probable quantity of drugs involved was between 350 and 500 grams. Rec. vol. I, doc. 43, at 4 ¶ 8 (Plea Agreement, filed June 6, 2005). The government agreed to recommend a three-level downward adjustment for acceptance of responsibility if Mr. Beltran "fully accept[ed] responsibility" and

promptly pleaded guilty.  *Id.* at 8 ¶ 17(a)-(b).  The government also agreed to recommend a Section 5K1.1 downward departure "[i]f the United States determines, in its sole discretion, that the Defendant has fully, completely, and truthfully cooperated with the United States."  *Id.* at 9 ¶ 17(e).

The district court held a Change of Plea Hearing on June 6, 2005.  During the Rule 11 colloquy, Mr. Beltran stated that (1) he had been satisfied with his counsel, (2) he had voluntarily signed the plea agreement, (3) he had understood the agreement and had discussed it with his counsel, and (4) he had not relied on any promises not contained in the plea agreement.  Rec. vol. IV, at 5-7.  The court explained that it did not know his sentence and would be influenced by the pre-sentence report ("PSR") and "whether the Government files certain motions for substantial cooperation."  *Id.* at 11.

At the hearing, Mr. Beltran admitted to the underlying elements of the offense charged–that he knowingly conspired with Mr. Macias and Ms. Humphrey to posses with intent to distribute, and to distribute at least 50 grams of methamphetamine.  *Id.* at 16-17.  Mr. Beltran further stipulated that he helped Mr. Macias to transport methamphetamine from Ogden, Utah to Gillette, Wyoming, and the amount of drugs in the conspiracy was between 350 and 500 grams.  *Id.* at 18-19.  Based on Mr. Beltran's responses, the court concluded that the guilty plea was knowing, voluntary, and supported by an adequate factual basis.  *Id.* at 21-22.

The PSR recommend a base offense level of 30 and a three-level

adjustment for acceptance of responsibility. The PSR did not recommend a safety-valve reduction under 18 U.S.C. § 3553(f), on the grounds that Mr. Beltran had not fulfilled his obligations to provide all information and evidence to the government. Mr. Beltran objected to the PSR's recommendation that he was not eligible for a § 3553(f) safety-valve reduction in sentencing.

At sentencing on August 19, 2005, Mr. Beltran sought a continuance because he wanted to negotiate more with the government on a Section 5K1.1 motion for substantial assistance. The district court declined to issue a continuance and made it clear that "[t]he issue of further downward departure is available within one year should the Government decide to make it based upon the additional information that you have provided in this case." Rec. vol. V, at 5 (Sent. Tr., dated Aug. 19, 2005). The government agreed to recommend a safety-valve reduction but indicated that it would not file a Section 5K1.1 motion.

Prior to the announcement of his sentence, Mr. Beltran (both through his counsel and personally) explained to the court a series of events related to his government cooperation. Mr. Beltran's attorney stated that he had represented Mr. Beltran during four proffers in the federal case, and "the proffers did not go well. We ended up meeting about four times, and the Government was not happy with Mr. Beltran. He contradicted himself and was not fully forthcoming." *Id.* at 9. Counsel then read aloud the English translation of two letters that Mr. Beltran had received from his brother in Mexico. The letters suggested that family

members had been threatened and his brother had been murdered because of Mr. Beltran's cooperation.

Mr. Beltran then explained how he had initially provided a map for agents showing where drugs and money had been hidden, and before his federal indictment, he had attempted to make phone calls and set up drug transactions for law enforcement agents. Mr. Beltran stated that upon his arrest and indictment, a prosecutor had misinformed the court that an agent could not reach him, thus prompting the court to retain Mr. Beltran in custody while the federal charges were pending. *Id*. at 16-17. Mr. Beltran stated that, if he had remained released on bond, those individuals that he had "set . . . up" "would have never done [anything] to my family if they would have never found out." *Id*. at 19.

At sentencing, the district court applied a § 3553(f) safety-valve reduction and reduced Mr. Beltran's offense level from 27 to 25. The court then sentenced Mr. Beltran to 57 months' imprisonment, at the low end of the advisory range, and it also imposed 36 months' supervised release and a $500 fine.

## II. DISCUSSION

In *Anders,* the Supreme Court held that "if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." 386 U.S. at 744. This court "must then conduct a full examination of the record to determine whether defendant's claims are wholly frivolous. If [we] conclude[ ] after such an examination that

-5-

the appeal is frivolous, [we] may grant counsel's motion to withdraw and may dismiss the appeal." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005).

Counsel's brief, which was also furnished to Mr. Beltran, identified two potential appellate issues: (1) that the government's refusal to file a substantial-assistance motion was unlawful; and (2) that Mr. Beltran's sentence was unreasonable. In response to counsel's brief, Mr. Beltran filed a supplemental letter and pro se reply brief that addressed these possible challenges. He contends that the government's failure to file a Section 5K1.1 motion breached the plea agreement as he understood it when he entered into the agreement.

Mr. Beltran's letter could also be construed to raise a claim of ineffective assistance of counsel. As he acknowledges in his letter, however, he must pursue that claim in a collateral proceeding under 28 U.S.C. § 2255. *See United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("[Ineffective assistance] claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed.").

A.     The government's refusal to file a Section 5K1.1 motion

Counsel's *Anders* brief first identifies as a potential issue on appeal the government's refusal to file a Section 5K1.1 motion reflecting Mr. Beltran's substantial assistance. The decision to file a substantial-assistance motion is left to the prosecutor unless "a formal agreement . . . would bind the prosecutor."

-6-

*United States v. Massey*, 997 F.2d 823, 824 (10th Cir. 1993). Further, this court can review the government's refusal to file a substantial-assistance motion only if that decision was based on an unconstitutional motive or was not rationally related to a legitimate government end. *See Wade v. United States*, 504 U.S. 181, 185-86 (1992); *United States v. Duncan*, 242 F.3d 940, 946 (10th Cir. 2001).

We agree with counsel that no non-frivolous grounds appear on this record to challenge the government's refusal to file a Section 5K1.1 motion. First, the plea agreement clearly leaves the decision to file a substantial-assistance motion to the "sole discretion" of the prosecutor. Rec. vol. 1, doc. 43, at 9 ¶ 17(e). Second, Mr. Beltran has not asserted any unconstitutional motive for the government's failure to file the motion, and the record on appeal does not suggest such an improper motive. *Cf. Duncan*, 242 F.3d at 947 (explaining that unconstitutional motives include those based on a defendant's race, religion, or national origin). Indeed, we know from the sentencing transcript that Mr. Beltran "was not fully forthcoming" during his four proffers. Rec. vol. V, at 9. The government has a legitimate interest in filing substantial-assistance motions only for those defendants who fully cooperate and are genuinely forthcoming.

B.      Reasonableness of Mr. Beltran's sentence

Counsel also contends that any challenge to the reasonableness of Mr. Beltran's sentence would be without merit. At sentencing, the district court applied a safety-valve reduction, and the 57-month sentence was at the bottom

end of the advisory range and below the statutory minimum of 60 months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(B).

A sentence within a properly calculated advisory range is presumptively reasonable, and "[t]his is a deferential standard that [Mr. Beltran] may rebut by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in § 3553(a)." *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). The court was not required to consider individually each § 3553(a) factor before announcing a sentence, *see United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005), but it did discuss Mr. Beltran's personal and family history and was aware of the alleged threats to his family in Mexico, *see* Rec. vol. V, at 6-7, 22-24. Mr. Beltran has identified no mitigating factors that would have counseled a sentence lower than the advisory range, and we can discern no reason why the advisory Guidelines range was improperly calculated. Thus, any claim challenging the reasonableness of Mr. Beltran's sentence would be frivolous.

C.    Breach of the plea agreement

Mr. Beltran argues in his reply brief that the government breached the plea agreement by not filing a Section 5K1.1 motion. The plea agreement provides that the government will recommend such a motion at sentencing, or within one year of sentencing, "[i]f the United States determines, in its sole discretion, that the Defendant has fully, completely, and truthfully cooperated with the United States." Rec. vol. I, doc. 43, at 9 ¶ 17(e). We "use[] a two-step analysis to

determine whether the United States violated a plea agreement: the sentencing court should (1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea." *United States v. Guzman*, 318 F.3d 1191, 1195-96 (10th Cir. 2003). We review de novo "[a] claim that the government has breached a plea agreement." *Id*. at 1195.

Under the first step, Mr. Beltran's plea agreement allowed the government to determine, "in its sole discretion," whether he had fully and truthfully cooperated to warrant a Section 5K1.1 motion. The plea agreement contained no unqualified promise by the government to file such a motion. As to the second step, Mr. Beltran stated his understanding at the plea hearing that the plea agreement was complete and that he was relying on no promises made to him outside its provisions. Rec. vol. IV, at 17. We therefore reject as frivolous Mr. Beltran's claim that the government breached the plea agreement.

## III. CONCLUSION

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.

Entered for the Court,


Robert H. Henry
Circuit Judge

-9-