**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GREGORY A. GARTON,

Defendant - Appellant.

No. 08-8032

(D. Wyoming)

(D.C. No. 07-CR-00135-ABJ-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **MURPHY**, and **GORSUCH**, Circuit Judges.

---

I. **Introduction**

Defendant-appellant, Gregory A. Garton, was charged in an eight-count

superceding indictment with drug and firearms crimes. Garton moved to dismiss

Counts 1 and 6, arguing they violated the terms of a prior plea agreement. Garton

also filed a motion in limine to preclude the introduction of evidence implicating

him in an Arizona murder. The district court denied the motion to dismiss the

two counts but granted the motion in limine. At trial, a witness violated the

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

liminal order by referencing Garton's alleged role in the Arizona murder. The district court gave a curative instruction and denied Garton's motion for a mistrial.

The jury convicted Garton on all eight counts. He was sentenced to seventy-five years' imprisonment. On appeal, Garton challenges the district court's refusal to dismiss Counts 1 and 6, and the court's denial of his motion for a mistrial. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the judgment.

## II.    Background

On September 11, 2003, Garton was stopped in Rawlins, Wyoming by the Rawlins Police Department because his vehicle had a non-functioning headlight. During a search of Garton's truck, officers found two loaded pistols, a shotgun, a pipe containing a residual amount of methamphetamine, an empty duffle bag which smelled strongly of marijuana, and a duct-taped package containing $8000 in United States currency. As a consequence of this traffic stop, Garton was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He pleaded guilty to the charge, entering into a written plea agreement on March 12, 2005, containing the following provision:

> The United States agrees that in exchange for the Defendant's plea of guilty to the crime charged in the Indictment the United States will not seek to charge the Defendant with any additional offenses arising out [of] the facts and circumstances giving rise to the charge contained in the plea agreement.

Garton was sentenced to time served and two years' supervised release.

Two years after his felon-in-possession conviction, Garton was charged in an eight-count superceding indictment with drug and firearms crimes. Only two counts are relevant to this appeal. Count 1 charged Garton with conspiracy to possess with intent to distribute and to distribute, methamphetamine, cocaine, and marijuana. Count 6 charged that Garton carried a firearm during and in relation to the drug-trafficking crime charged in Count 1. Both counts alleged the criminal conduct occurred some time between January 1, 2002, and September 2006. Garton moved to have the two counts dismissed, arguing they violated the terms of the 2005 plea agreement because the date of his Rawlins arrest fell within the time period referenced in Counts 1 and 6. He asserted that most corroborating physical evidence supporting Counts 1 and 6 would likely center on evidence seized as a result of the Rawlins traffic stop. The district court denied the motion and the matter proceeded to trial.

Several of Garton's alleged co-conspirators testified at his trial. Garton's former girlfriend, Wendi Eades Dodd, testified that she accompanied Garton on several trips to Arizona between March 2003 and September 2003. While in Arizona, Garton purchased marijuana and methamphetamine for distribution in Wyoming. According to Ms. Dodd, Garton was traveling to Arizona when he was stopped in Rawlins on September 11, 2003. Ms. Dodd testified the Arizona trips were discontinued after the Rawlins arrest because not "many people trusted

[Garton] after that." She further stated, however, that beginning in September 2004, Garton began helping her neighbor, Robert Dodd,[1] distribute methamphetamine. Ms. Dodd also testified that she purchased a gun on July 4, 2004, and Garton carried that firearm until January 2005 when it was seized by police. When asked how often she saw Garton with a firearm between 2002 and 2005, Ms. Dodd stated, "He had them everywhere he went."

Robert Dodd corroborated many of Ms. Dodd's statements, testifying that Garton sold small amounts of methamphetamine for him beginning in the fall of 2004. Mr. Dodd also testified that Garton frequently traveled with him to Salt Lake City where Dodd would purchase methamphetamine for resale in Wyoming. When the two returned to Casper, they divided the drugs between them; a portion of the amount Garton received was for his personal use and the remainder was for distribution to other users in Casper. Mr. Dodd testified Garton carried a firearm during the trips to Salt Lake City and that Garton "usually" carried a gun in a shoulder holster.

Several other witnesses testified about Garton's drug trafficking activities. Robert Clark testified that he purchased approximately 5.25 grams of crystal methamphetamine from Garton in the fall of 2002. Becky Cavender testified that she purchased three to four ounces of methamphetamine from Garton in the

[1]At the time of Garton's trial, Wendi Eades Dodd was married to Robert Dodd.

-4-

summer of 2003. According to Ms. Cavender, Garton delivered the drugs to her apartment in a briefcase that contained both the methamphetamine and a gun. The government also offered the testimony of Zane Grayson, who stated he purchased a small amount of methamphetamine from Garton in the fall of 2004. Grayson also testified that Garton traveled with Mr. Dodd to Salt Lake City on at least two occasions to purchase large amounts of methamphetamine and he assumed Garton brought his gun on those trips because Garton always carried a black gun in a shoulder holster. Shaunell Brown stated that she once purchased methamphetamine from Garton and assumed he had a black pistol with him during the sale because he "always had it." Marcus Grayson testified that Garton carried two handguns "most of the time" and he characterized Garton as Mr. Dodd's "collection guy."

The government's case was also supported by the testimony of Eric Ford and Troy Palmer, officers with the Rawlins Police Department. Officer Ford testified that he initiated the traffic stop of Garton's vehicle on September 11, 2003, and found a shotgun and two loaded handguns when he searched the passenger compartment. Garton was wearing a shoulder holster but there was no gun in it. Ford told the jury officers also found a glass pipe commonly used to smoke cocaine or methamphetamine, a duct-taped package later determined to contain $8000, and a small amount of marijuana. Officer Palmer, who continued the search after Garton's vehicle was towed, testified there were three duffle bags

in the vehicle. Two of the bags contained clothing; the third was empty and smelled strongly of marijuana. The government also introduced the three firearms seized from Garton on September 11, 2003.

On the second day of trial, the government elicited testimony from Jason Albat. Like many of the other government witnesses, Albat testified that Garton traveled to Salt Lake City with Mr. Dodd to purchase methamphetamine and he assumed Garton carried his pistol on the trips because he "always had his pistol on."[2] According to Albat, Garton was typically with Mr. Dodd "when the deals went down." During redirect examination, the following exchange took place between Albat and the prosecutor when Albat was questioned about Garton's trips to Arizona with Ms. Dodd:

> Q:    Mr. Albat, I was asking you what [Ms. Dodd] told you about
>        her trips with Mr. Garton to Arizona.
> A:    Yeah.
> Q:    What did she tell you?
> A:    She just told me that that's where, uh, they got their weed.
>        She didn't, she didn't mention too much other than that. Uh,
>        she mentioned that one time down there that, uh, or I don't
>        know if she was present or whatever, but that [Garton] had
>        shot someone down there.

Albat's testimony was given in direct violation of the district court's liminal order. The court immediately instructed the jury as follows: "Ladies and gentlemen, you will disregard the testimony of this witness with regard to that

---

[2]Albat testified he once carried a firearm on a drug-purchasing trip to Salt Lake City with Mr. Dodd. Albat's purpose in accompanying Dodd was to "watch [Dodd's] back" and "make sure [Dodd] didn't get robbed."

matter. It is stricken." Garton's counsel then moved for a mistrial, which was denied.

The jury convicted Garton of all eight counts set out in the superceding indictment. In this appeal, Garton challenges the district court's refusal to dismiss Counts 1 and 6, and the court's refusal to grant a mistrial based on Albat's testimony about the Arizona murder.

## III. Discussion

### A. Prior Plea Agreement

Garton first argues the government violated the terms of the 2005 plea agreement when it charged him with conspiracy to possess with intent to distribute and to distribute, methamphetamine, cocaine, and marijuana (Count 1) and carrying a firearm during and in relation to a drug trafficking crime (Count 6). Garton seeks dismissal of the two disputed counts and a retrial on the remaining six counts. *See Santobello v. New York*, 404 U.S. 257, 263 (1971) (including specific performance as a possible remedy for a violation of a plea agreement); *see also Margalli-Olvera v. INS*, 43 F.3d 345, 351 (8th Cir. 1994) ("Allowing the government to breach a promise that induced a guilty plea violates due process."). The question of whether the government has violated the terms of a plea agreement is reviewed de novo. *United States v. Guzman*, 318 F.3d 1191, 1195 (10th Cir. 2003). Our review involves a two-step process in which we examine the nature of the government's promise and evaluate that promise in light

of the defendant's reasonable understanding at the time he entered into the agreement. *Id*. at 1195-96.

Here, the government agreed it would not charge Garton with any additional crimes "arising out [of] the facts and circumstances giving rise to the" felon-in-possession charge. The facts and circumstances giving rise to that charge are: (1) Garton was previously convicted of a felony, (2) he knowingly possessed a firearm on September 11, 2003, and (3) the possession was in or affecting interstate commerce. *United States v. Ledford*, 443 F.3d 702, 705 (10th Cir. 2005). The inclusion of Counts 1 and 6 in the superceding indictment was not a per se violation of the 2005 plea agreement. Both counts allege Garton's criminal conduct occurred some time between January 1, 2002 and September 2006. Although that date range includes the day Garton was stopped in Rawlins, nothing in the language of the superceding indictment compels the conclusion that either Count 1 or Count 6 was premised, in whole or in part, on the facts or circumstances giving rise to the felon-in-possession charge. The question remains, however, whether the government violated the plea agreement when it introduced evidence at trial that Garton was carrying firearms when he was pulled over in Rawlins.

Both Officer Ford and Officer Palmer testified about the Rawlins traffic stop, and the firearms themselves were introduced into evidence. A review of the record reveals this evidence was offered to prove that Garton engaged in drug

trafficking activities and that he carried a firearm during and in relation to those activities. *See United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991) (holding "firearms, large sums of cash, . . . and uncharged quantities of illegal drugs" are admissible to show a defendant is involved in the distribution of illegal drugs). Instruction 30 related to Count 1 and stated,

> In determining a person's "intent to distribute" controlled substances, the jury may consider, among other things, the purity of the controlled substance, the quantity of the controlled substance, the presence of equipment used in the processing or sale of controlled substances, *firearms* and large amounts of cash. (Emphasis added.)

Instruction 53 related to Count 6, and informed the jury it could convict Garton on that count if it found he carried a firearm during and in relation to the conspiracy charged in Count 1. Further, during closing arguments the government referenced the evidence from the Rawlins traffic stop, tying it to both counts by arguing:

> 10 days later or about Mr. Garton is back on his way down to Arizona. And what's he—what does he have with him, ladies and gentlemen? He has two pistols with rounds in the chamber. He has a shotgun. He has cash wrapped in plastic and duct tape with an 8 on the outside of it. And he has a small amount of marijuana and methamphetamine, which makes sense because he's going back down to Arizona to re-up.

Thus, despite its promise that it would not seek to charge Garton with additional offenses arising out of the facts and circumstances giving rise to the felon-in-

possession charge, the government used those facts and circumstances[3] at trial to support Counts 1 and 6.

We discern no practical difference between basing Counts 1 and 6 solely on Garton's September 11, 2003, firearm possession and using evidence of that possession to prove the broader charges as set out in the superceding indictment. However, it is unnecessary for us to definitively resolve whether the introduction of evidence that Garton was carrying firearms on September 11, 2003, while allegedly en route to Arizona to purchase illegal drugs, violated the terms of the plea agreement because any error in introducing that evidence to prove Counts 1 and 6 was harmless.[4] *See United States v. Pearson*, 203 F.3d 1243, 1263 (10th Cir. 2006) (concluding it was appropriate to apply a harmless error analysis to a due process violation). Numerous witnesses testified that Garton carried a firearm while engaged in a conspiracy to distribute illegal drugs and the majority of those witnesses testified about events occurring after the fall of 2004, when

---

[3]Garton's possession of drug paraphernalia and $8000 in cash were relevant to Count 1. Those facts and circumstances, however, did not give rise to the felon-in-possession charge and, therefore, they do not implicate the 2005 plea agreement.

[4]Although the government does not argue harmlessness in its appellate brief, this court will address the issue *sua sponte*. *See Wyoming v. Livingston*, 443 F.3d 1211, 1226 (10th Cir. 2006). The record is not lengthy or complex; the testimony of the witnesses has been comprehensively summarized by the government for purposes of Garton's second claim of error. *See id.* Further, there is no serious doubt about the harmlessness, and a retrial on Counts 1 and 6 without the September 11, 2003, evidence would be futile. *See id.*

-10-

Mr. Dodd began renting a shop in Casper. The testimony of Officers Ford and Palmer that Garton was carrying a firearm on September 11, 2003, was either corroborative of or cumulative to these other witnesses. *See United States v. Clifton*, 406 F.3d 1173, 1179 (10th Cir. 2005). Viewing the record as a whole, the officers' testimony and the admission of the firearms seized from Garton in Rawlins on September 11, 2003, were only a minor part of the government's case against Garton on Counts 1 and 6. We conclude any error in admitting that evidence was harmless beyond a reasonable doubt.

B.      *Violation of Motion in Limine*

Garton also challenges the district court's refusal to grant a mistrial after the government's witness, Jason Albat, inculpated him in a murder in Arizona. The testimony was given in direct contravention of the liminal order. This court reviews the denial of a motion for mistrial for abuse of discretion. *United States v. Meridyth*, 364 F.3d 1181, 1183 (10th Cir. 2004). When a government witness offers improper testimony, we evaluate "(1) whether the prosecutor acted in bad faith, (2) whether the district court limited the effect of the improper statement through its instructions to the jury, and (3) whether the improper remark was inconsequential in light of the other evidence of the defendant's guilt." *Id*. Garton concedes the prosecutor did not act in bad faith. His argument, instead, focuses first on his assertion the district court's curative instruction was insufficient and second on his position the improper remark was severely

-11-

prejudicial because no other admissible evidence painted him as a violent individual.

After Albat's improper testimony, the district court immediately gave the jury a limiting instruction, directing it to disregard the statement. While the instruction was short, it was comprehensive and unequivocal. Further, we assume the jury followed the court's clearly worded instruction. *United States v. Rodriguez-Aguirre*, 108 F.3d 1228, 1237 (10th Cir. 1997). It is impossible to deny that Albat's testimony was inflammatory. Having reviewed the record, however, we discern no basis to believe the jury relied on the statement to convict Garton. The government's admissible evidence was overwhelming on all counts. After fully considering Garton's arguments, we conclude the district court did not abuse its discretion when it refused to grant a mistrial.

## IV.    Conclusion

Judgment **affirmed**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge