**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

KELLY MAURICE HILL, a/k/a Shannon
Dorr,

      Defendant - Appellant.

No. 12-5132
(D.C. No. 4:10-CR-00165-GKF-1)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **MURPHY**, and **MATHESON**, Circuit Judges.

      Kelly Maurice Hill appeals his sentence following a guilty plea to drug conspiracy

charges. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we

affirm.

**I**

      In a detailed one-count indictment, Hill was charged with conspiracy to possess

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

with intent to distribute 100 kilograms or more of marijuana and conspiracy to distribute

100 kilograms or more of marijuana.  On March 7, 2011, Hill agreed to plead guilty

pursuant to a plea agreement.  It states:

> Provided the defendant clearly demonstrates acceptance of responsibility, the United States agrees to recommend a two-level reduction in offense level pursuant to U.S.S.G. § 3E1.1.  The United States agrees to file a motion recommending that the defendant receive an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b) if the defendant is otherwise eligible therefor. . . .  The obligations of the Government herein, relative to acceptance of responsibility are contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States.  If the defendant falsely denies, or makes conflicting statements as to, his involvement in the crime to which he is pleading, falsely denies or frivolously contests relevant conduct that the Court determines to be true, willfully obstructs, or attempts to obstruct or impede the administration of justice as defined in U.S.S.G. § 3C1.1, or perpetrates or attempts to perpetrate crimes while awaiting sentencing, or advances false or frivolous issues in mitigation, the United States expressly reserves the right to withdraw any recommendation regarding acceptance of responsibility without breaching the agreement.

After Hill petitioned the district court to enter a plea of guilty, the district court

judge engaged in a colloquy with Hill regarding his plea and rights.  See Fed. R. Crim. P.

11(b).  Hill affirmed that he understood the terms of the plea agreement and knew he

could face a sentence of imprisonment of up to forty years.  The district court specifically

inquired about each paragraph of the plea agreement's appellate waiver.[1]  It found that

---

[1] The plea agreement includes the following appellate waiver:

> In consideration of the promises and concessions made by the United States in this plea agreement, the defendant knowingly and voluntarily agrees to the following terms:

Continued . . .

Hill was "aware of the nature of the charges and the consequences of a guilty plea and that his guilty plea [wa]s a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense."

A presentence investigation report ("PSR") was completed in May 2011. Both Hill and the government filed objections to the PSR. The government argued that Hill should receive an upward adjustment for obstruction of justice and that he should not receive a downward adjustment for acceptance of responsibility. Regarding the obstruction of justice enhancement, the government included factual allegations about Hill's conduct prior to the execution of the plea agreement, suggesting Hill was involved in the murder of one prosecution witness and the attempted assassination of another. The government also referenced evidence of pre-plea phone conversations between Hill and his girlfriend, Deja Howard, in which he instructed her to secure certain drug proceeds.

The government's objection also details post-plea phone calls between Hill, Howard, and Howard's mother. In those calls, Hill asked Howard to "take care of" his requests regarding the disposition of drug proceeds, and to read and then burn a letter he

---

> a. The defendant waives the right to directly appeal the conviction and sentence pursuant to 28 U.S.C. § 1291 and/or 18 U.S.C. § 3742(a);
> b. The defendant reserves the right to appeal from a sentence which exceeds the statutory maximum . . . .
> The defendant expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his rights; and that defendant knowingly and voluntarily waives those rights as set forth above.

sent. In another call made after the plea agreement was signed, Hill asked Howard to delete two phone numbers from a cell phone. Finally, letters written by Hill and discovered by the Tulsa County Sherriff's Office appear to request that recipients take part in criminal activity and instruct the recipients to destroy the letters after reading them.

Following a summary of the intercepted letters, the government quotes a United States Sentencing Guidelines Application Note providing that conduct which would result in an enhancement for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, cmt. n.4. Apparently Latonya Ballard and Howard were instructed by the defendant on "how to hide and conceal assets and drug proceeds, as well as carry out transactions with other co-conspirators."

Based on the government's objection, the probation officer revised the PSR to deny an adjustment for acceptance of responsibility, but did not add an obstruction of justice enhancement. Hill objected to the removal of the acceptance of responsibility adjustment in the revisions. He also objected to the PSR's recommended four-level enhancement for being an organizer or leader of criminal activity that involved five or more participants.

The district court determined that an enhancement was appropriate for obstruction of justice, finding by a preponderance of the evidence that "Hill offered $5,000 for the murder of a man who was supposed to go into protective custody." It also concluded that

-4-

Hill had not withdrawn from criminal conduct or associations and that he did not voluntarily assist authorities in the recovery of the fruits of the offense. Thus a reduction for acceptance of responsibility was denied. In doing so, the court "relie[d] on recorded telephone conversations between Hill and his girlfriend, Deja Howard, as well as letters written by Hill to Howard and other participants of the conspiracy." Specifically, the court found that "[a]fter pleading guilty to the Indictment, Hill called Howard from the jail and . . . told her to read and burn particular letters she received from Hill, and instructed her to delete two phone number from a cellular phone inside a coat pocket." Hill was deemed "an organizer or leader of criminal activity that involved five or more participants." His total offense level of 34 and criminal history category II resulted in a Guidelines range of 168-210 months' imprisonment. Hill was sentenced to 168 months.

On appeal, the government filed a motion to enforce Hill's appellate waiver. Hill's counsel asserted that the waiver "should not be enforced because the government breached the plea agreement." A panel of this court denied the government's motion without prejudice, thereby permitting the government to raise the issue again in its merits brief. The government continues to urge this court to enforce the appellate waiver and dismiss the appeal, and Hill's counsel acknowledges that if the claim of breach is rejected, he "can submit no other viable ground upon which enforcement of the appeal waiver may be denied."

## II

Hill urges us to entertain his appeal despite the appellate waiver in his plea

agreement because, he claims, the government breached the agreement.  See United States v. Rodriguez-Rivera, 518 F.3d 1208, 1212 (10th Cir. 2008) ("[A]n appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement . . . .").  We review for plain error because Hill did not argue in the district court that the government had breached the plea agreement.  United States v. Bullcoming, 579 F.3d 1200, 1205 (10th Cir. 2009).  Thus, to prevail on his breach claim, Hill "must demonstrate (1) error that is (2) plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Schulte, 741 F.3d 1141, 1149 (10th Cir. 2014) (quotation omitted).  We hold that error occurred and that it was plain, but we deny relief because the error did not affect Hill's substantial rights.

"Where the Government obtains a guilty plea which is predicated in any significant degree on a promise or agreement with the U.S. Attorney, such promise or agreement must be fulfilled to maintain the integrity of the plea."  United States v. Villa-Vazquez, 536 F.3d 1189, 1196 (10th Cir. 2008) (quotation omitted).  "General principles of contract law define the government's obligations under the agreement, looking to the express language and construing any ambiguities against the government as the drafter of the agreement."  Id. (quotation omitted).  "We evaluate the record as a whole to ascertain whether the government complied with its promise."  United States v. VanDam, 493 F.3d 1194, 1199 (10th Cir. 2007).

We consider the pertinent language:  "The obligations of the Government herein,

relative to acceptance of responsibility are contingent upon the defendant's <u>continuing</u> manifestation of acceptance of responsibility as determined by the United States." (Emphasis added.) Construing ambiguities "against the government as the drafter of the agreement," <u>Villa-Vazquez</u>, 536 F.3d at 1196, we conclude that the use of the word "continuing" means that the government cannot rely upon Hill's pre-plea conduct to advocate that he be denied an acceptance of responsibility adjustment under § 3E1.1, because the agreement implies that Hill had accepted responsibility up to that point.

The government's conduct in this case was not egregious. In its objections to the PSR, the government argued both that Hill was not entitled to a reduction for acceptance of responsibility and that his offense level should be increased because of obstruction of justice. We acknowledge that the plea agreement specifically notes that conduct constituting obstruction of justice under § 3C1.1 may also qualify as conduct manifesting a lack of acceptance of responsibility. But the government failed to restrict itself as the plea agreement required, arguing before the district court that "the defendant has clearly obstructed, impeded and attempted to obstruct the administration of justice by systematically and continually advising co-conspirators, including Deja Howard and Latonya Ballard how to hide and conceal assets and drug proceeds, as well as carry out transactions with other co-conspirators such as 'Fat Boy'. The application of U.S.S.G. §§ 3E1.1(a) or (b) should not apply." We agree with Hill that the government's argument incorporated, either expressly or by reference, both pre- and post-plea conduct. Use of the phrase "systematically and continually" without identifying a time frame—and within

the context of a motion that referenced pre- and post-plea conduct—sets the parameters.

We hold that the error in this case was plain. "[A]n error is 'plain' if it is clear or obvious at the time of the appeal." United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). As we indicated in our decision in United States v. Cordery, 656 F.3d 1103 (10th Cir. 2011), "plain" signifies "clear under current law," meaning "the Supreme Court or this court has addressed the issue." Id. at 1106 (quotations and alterations omitted); see Santobello v. New York, 404 U.S. 257, 261-63 (1971).

This error, however, did not affect Hill's substantial rights. Because Hill's relevant rights "relate to sentencing, the 'outcome' he must show to have been affected is his sentence." Puckett v. United States, 556 U.S. 129, 142 n.4 (2009). "[I]t is the defendant's burden to prove entitlement to the § 3E1.1 adjustment." United States v. Melot, 732 F.3d 1234, 1244 (10th Cir. 2013). Application Notes for § 3E1.1 suggest that appropriate considerations when determining whether to decrease the offense level include "voluntary termination or withdrawal from criminal conduct or associations" and "voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense." § 3E1.1 cmt. n.1. We do not hesitate to conclude that the evidence of Hill's post-plea conduct—including his instructions to others to destroy documents he had written, to delete telephone numbers from a telephone, and to employ other evasive tactics while continuing illicit behavior—would have resulted in denial of the adjustment. Incorporation of pre-plea conduct into the government's argument for the enhancement did not result in a longer sentence because Hill would have received the same sentence

-8-

absent the breach.  Thus, Hill has failed to demonstrate plain error.[2]

## III

We have emphasized the importance of preserving "the benefit of the

government's bargain" by enforcing appellate waivers.  United States v. Hahn, 359 F.3d

1315, 1325 (10th Cir. 2004) (en banc) (per curiam).  But we have also held that "an

appellate waiver is not enforceable if the Government breaches its obligations under [a]

plea agreement."  Rodriguez-Rivera, 518 F.3d at 1212.  We assume, without deciding,

that an appellate waiver is unenforceable when a criminal defendant demonstrates on

appeal that the government breached its plea agreement, even if the defendant is not

entitled to relief for the breach because he failed to object below and cannot satisfy all

four prongs of the plain-error standard.  See United States v. Lovelace, 565 F.3d 1080,

---

[2] We remind the government that it "may not unilaterally declare a breach of a plea agreement; a court must hold a hearing and make a finding that the defendant breached the agreement before the government is released from its obligations under the agreement."  United States v. Guzman, 318 F.3d 1191, 1196 (10th Cir. 2003).  In this case, the government argued that Hill obstructed justice and thereby had not continued to manifest acceptance of responsibility.  The government unilaterally decided that, despite the plea agreement, it could object to the PSR's inclusion of the reduction.  Guzman requires the district court to make a finding of breach by the defendant before allowing the government to alter its sentencing recommendations.  Id. at 1196-97.  We decline to find error on this issue, however, because Hill failed to make this argument on appeal and has therefore forfeited it.  See Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007).

We note that Guzman also failed to "object[] in the District Court that the government had breached the Plea Agreement," and we did not review for plain error.  Guzman, 318 F.3d at 1195.  Our decision in Guzman predates the Supreme Court's decision in Puckett, which requires plain error review.  See 556 U.S. at 143; see also Bullcoming, 579 F.3d at 1205.  For the reasons already outlined, we conclude that Hill cannot show that the district court's error affected his substantial rights.

1086, 1088 (8th Cir. 2009) (allowing appeal under plain error standard despite appellate waiver without showing that breach affected substantial rights); United States v. Gonzalez, 16 F.3d 985, 989-90 (9th Cir. 1993) (failure to object in district court "has no bearing on whether the government did in fact breach the agreement for purposes of determining whether [defendant] may bring this appeal at all"). Our willingness to consider the merits of Hill's appeal is based in part on the fact that both sides have already fully briefed this case due to our nonprejudicial denial of the government's motion to enforce the appellate waiver. Hahn's economy rationale lacks compelling force when the government has already incurred the costs of prosecuting the appeal. See Hahn, 359 F.3d at 1325.

Hill brings two additional claims alleging that the district court misapplied the United States Sentencing Guidelines. Neither has merit. "We review a district court's interpretation of the Sentencing Guidelines de novo, and its factual findings for clear error." United States v. Walters, 269 F.3d 1207, 1214 (10th Cir. 2001). "We view evidence underlying a district court's sentence . . . , and inferences drawn therefrom, in the light most favorable to the district court's determination." Id. (quotation and alteration omitted). Under the clear error "standard, we will not reverse the district court's finding unless, on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed." United States v. Shengyang Zhou, 717 F.3d 1139, 1149 (10th Cir. 2013) (quotations omitted).

Hill argues that the guideline adjustment for obstruction of justice was erroneously

imposed. Enhancement is permitted if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. The district court found that Hill had offered $5,000 for the murder of a person who was supposed to enter protective custody, concluding that the witness who testified to that effect was credible. Hill argues that his request that someone "take care of" a "fat guy" and a "girl" by Christmas before the man entered protective custody referred to something other than the assassination of the rotund witness who was later killed. We are unconvinced that the district court clearly erred. Our precedent forecloses any argument that the government failed to demonstrate that Hill committed a substantial step toward obstruction of justice. See United States v. Fleming, 667 F.3d 1098, 1108 (10th Cir. 2011) ("[A]ttempting to threaten or influence a witness through a third-party intermediary may constitute a substantial step sufficient to justify application of an obstruction of justice enhancement."); see also United States v. McKeighan, 685 F.3d 956, 975 (10th Cir. 2012) ("[U]nder Section 3C1.1, a defendant need not actually threaten a witness; he need only attempt to influence the witness." (quotation and alteration omitted)). There was evidence that Hill set a price for the murder, said that he needed the act done by a specific date, and bought the witness who testified about the offer a phone, which the witness understood would be used to let Hill know if he found someone to "take care of the business" involving "the fat guy and the

-11-

girl." See Fleming, 667 F.3d at 1107 (10th Cir. 2011) ("[T]he fact that further, major steps remain before the crime can be completed does not preclude a finding that the steps already taken are substantial." (quotation omitted)).

Hill also argues that there was insufficient evidence to support the leader/organizer enhancement. He claims that the district court erred by concluding that he was a leader/organizer instead of a manager/supervisor. See U.S.S.G. § 3B1.1(a), (b). The Guidelines assign a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." § 3B1.1(a). The Application Notes suggest that to distinguish a leader/organizer from a manager/supervisor, courts should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

§ 3B1.1, cmt. n.4. The district court concluded that the enhancement was appropriate because Hill engaged at least four others to transport marijuana or large sums of money between Phoenix, Arizona and Detroit, Michigan, and he provided cellphones and itinerary information for those travels. The court also found that Hill would pay the others out of the proceeds he received from the illicit activity, and that he approached others for assistance in conducting the operation. Once again viewing the evidence in the light most favorable to the district court's determination, Hill has not demonstrated that the district court clearly erred in finding he was a leader or organizer. See United States

v. James, 592 F.3d 1109, 1113 (10th Cir. 2010).

**IV**

     **AFFIRMED**.


                                              Entered for the Court


                                              Carlos F. Lucero
                                              Circuit Judge