FILED
United States Court of Appeals
Tenth Circuit

September 3, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROY DEAN BULLCOMING,

Defendant - Appellant.

No. 09-6010

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**[*]
**(D.C. NO. 5:08-CR-00055-F-1)**

---

Fred L. Staggs, Oklahoma City, Oklahoma, for Defendant - Appellant.

Arvo Q. Mikkanen, Assistant United States Attorney, (John C. Richter, United States Attorney, with him on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.;

---

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Roy Dean Bullcoming was indicted in the United States District Court for the Western District of Oklahoma on seven counts of embezzlement and theft from Indian tribal organizations, *see* 18 U.S.C. § 1163, and eight counts of theft from gaming establishments on Indian lands, *see id.* § 1167. He entered into a plea agreement in which he agreed to plead guilty to one count of embezzlement. In exchange, the government dropped the other 14 counts and entered into several stipulations relating to restitution and his offense level under the United States Sentencing Guidelines (USSG). At sentencing, the government—without any objection from Mr. Bullcoming—presented testimony from a witness who claimed that Mr. Bullcoming had shown no remorse for his actions, and it also argued in favor of an upward variance, suggesting that it could probably never prove the full amount of money he took. The district court varied upward from the guidelines range, sentencing him to 36 months' imprisonment. On appeal Mr. Bullcoming contends that the government breached the plea agreement and that the court abused its discretion in varying upward. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.  BACKGROUND

### A.  The Offense and Other Related Conduct

Mr. Bullcoming, a member of the Cheyenne-Arapahoe Tribe, was an elected member of its Business Committee, representing Cheyenne District One. He was entrusted with administering his district's share of the net gaming revenue

generated by the tribe's two Lucky Star casinos. The district's share is to be used to finance various tribal programs and to provide services for tribal members, such as child welfare. In addition, a Business Committee member may dole out "Emergency Assistance" funds, which are intended to meet the emergency needs of individual tribal members.

Mr. Bullcoming did not follow these rules. Several times, he used the tribe's funds for his personal use. Counts 1 through 7 of the indictment involved his receipt of the following sums of tribal money: (1) checks totaling $10,000 in "Emergency Assistance" money to purchase a 2001 Pontiac Grand Am, titled in his name and used as a personal vehicle (counts 1 and 2); (2) two checks totaling $4,589.07 to make monthly payments in 2004 for a 2003 Toyota Tundra truck, also titled in his own name and used as a personal vehicle (counts 3 and 4); (3) a check for $2,108.50 used for repairs in 2004 to his Tundra (count 5); and (4) two checks totaling $8,995 to finance the 2004 purchase of a 1998 Dodge Caravan as a gift to Mildred K. Black, his former fiancée (counts 6 and 7).

Furthermore, between 2002 and 2007 Mr. Bullcoming took $21,056.89 from the tribal casinos by making false claims for travel-related expenses (such as travel, per diem, and registration fees) for gaming-industry training conferences and trade shows that he never attended. This misconduct was the basis for counts 8 through 15 of the indictment. In addition, uncharged, related misconduct admitted by Mr. Bullcoming included (1) 54 wire transfers of $11,095 to his niece

Tamara Beaver, and (2) some 60 other unauthorized disbursements of $16,035 in tribal funds, including "Emergency Assistance" funds, primarily to himself and his daughter.

## B.    The Plea Agreement

Mr. Bullcoming was indicted on February 20, 2008, and entered into a plea agreement on July 23.  Under the terms of the agreement, Mr. Bullcoming would plead guilty to count 1 of the indictment (relating to the purchase of his 2001 Pontiac Grand Am).  In return, the government would drop the other charges and agree not to charge him with any other crimes relating to his theft or embezzlement during 2002 through January 1, 2005.  The agreement contained two stipulations regarding the total losses from Mr. Bullcoming's misconduct. The stipulation regarding losses for purposes of restitution stated:

> [T]he parties further agree that, as part of the sentence resulting from defendant's plea, the Court will enter an order of restitution to all victims of the defendant's relevant conduct as determined by reference to the United States Sentencing Guidelines, including, but not limited to, losses caused by defendant's relevant conduct within the meaning of USSG § 1B1.3 as follows, an additional $90,350.75 unlawfully taken from Southwest Hotel and Casino Corporation, as agent for Lucky Star Casinos, and/or Cheyenne-Arapaho Tribes as referenced in Counts 2 through 15 of the Indictment and the amounts derived from other instances of abstracting, embezzlement, theft, willful misapplication, taking and conversion to his use or that of another as detailed in the three 404(b) notices filed in this action; for a total of $95,350.75.

R., Vol. 1 at 30–31.  And the stipulation for purposes of calculating his offense level under the guidelines stated:

Based upon the information that is known to the parties on the date this agreement is executed, *they expect to take, but are not limited to, the following positions at sentencing*: The parties hereby stipulate that the total amount of loss that should be attributed to this defendant for guideline calculation purposes is $95,350.75 and an order of restitution must be entered to reimburse the victim(s) of the crimes in that amount.

*Id.* at 32 (emphasis added).

The agreement also contained stipulations that Mr. Bullcoming should receive a two-level downward adjustment for acceptance of responsibility under USSG § 3E1.1(a), and that if the district court found § 3E1.1(b) also applicable, the government would move for an additional one-level downward adjustment under that provision. Two further paragraphs demarcated the limits of the parties' agreement on sentencing. One reserved the right to present evidence and argument on unstipulated matters:

Apart from any expressed agreements and stipulations, the parties reserve the right to advocate for, and present evidence relevant to, other guideline adjustments and sentencing factors for consideration by the U.S. Probation Office and the Court.

*Id.* at 33. The other released the government from its stipulations if it discovered additional information:

It is the expectation of the United States that its criminal investigation of defendant's conduct . . . will cease upon the signing of this plea agreement. However . . . the United States expressly reserves the right to take positions that deviate from the foregoing stipulations, agreements, or recommendations in the event that material credible evidence requiring such a deviation is discovered during the course of the United States' investigation subsequent to

the signing of this agreement or arises from sources independent of the United States, including the U.S. Probation Office.

*Id.* The agreement concluded with another reservation of rights by the government:

> The United States reserves the right to inform the Probation Office and the Court of . . . the nature and extent of defendant's activities with respect to this case and all other activities of defendant which the United States deems relevant to sentencing . . . .

*Id.* at 39.

The same day that he entered into the plea agreement, Mr. Bullcoming executed a separate "Petition to Enter Plea of Guilty." *Id.* at 18. In the petition he described the plea agreement as follows: "Plea Guilty to Count 1 other counts to be dismissed. I receive acceptance of responsibility and waive certain appeal rights." *Id.* at 26.

### C. Sentencing Proceedings

At sentencing, four tribal officials testified as representatives of the victims. One of them, Erica Hart-Whitecloud, the chief of staff for the tribal governor's office, said that Mr. Bullcoming "has continually refused to accept responsibility for his actions." *Id.*, Vol. 4 at 20. She noted that in 2005 he had been convicted in tribal court of embezzling $55,000 in tribal funds but "[a]fter three years, the defendant has virtually ignored the tribal courts and the orders of the tribal courts," *id.*, and "has paid no restitution to the tribes," *id.* She concluded that he "has not shown any remorse . . . and should be sentenced at the

-6-

highest level that he can be sentenced." *Id.* at 21.  Mr. Bullcoming did not object to any of this testimony.

The district court calculated Mr. Bullcoming's total offense level as 13 and his criminal-history category as I.  His guidelines sentencing range was therefore 12 to 18 months' imprisonment.  *See* USSG ch. 5, pt. A.  The court also ordered $101,585.68 in restitution, an amount he does not contest.

Of most importance to this appeal, the court also varied upward from the guidelines range.  The probation office's presentence investigation report (PSR) had so recommended.  Part E of the PSR (which addressed guidelines departures) noted that Mr. Bullcoming's tribal-court convictions would have raised his criminal-history category to III if they had been considered in the guidelines calculation.  *See* USSG § 4A1.2(i) (tribal sentences are not counted in calculating criminal-history category, but may be considered as a basis for departure under § 4A1.3).  It then stated in Part F, which addresses the possibility of a variance:

> Based on the information provided in Part E., regarding a departure for inadequacy of criminal history, a sentence above the advisory guidelines would be consistent with the factors listed in 18 U.S.C. § 3553 that consider the nature and circumstances of the offense and the history and characteristics of the defendant; specifically, the need for the sentence to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.

R., Vol. 2 at 26.  At the sentencing hearing the government took the same view. As support for a variance, it cited the poverty of the Cheyenne-Arapahoe tribal members, Mr. Bullcoming's abuse of a position of trust, and the need to deter

theft and embezzlement by those involved with Indian casinos in Oklahoma.  The

government also observed that Mr. Bullcoming's 2005 tribal-court embezzlement

convictions had not been considered in his criminal-history calculation and that

he had not fully complied with the court's orders in the tribal case.  Just before

concluding, the government remarked:

> In short, Your Honor, this is a very serious offense.  This defendant,
> the government probably will never be able to prove the full amount
> of restitution that he ultimately should be entitled to pay clearly
> based upon the evidence that the government was able to collect that
> might refer to what would be a fraction of what Mr. Bullcoming
> actually did take.

*Id.*, Vol. 4 at 29.  Mr. Bullcoming's counsel did not object to the government's

statements; and in his subsequent argument in opposition to a variance, he did not

address the possibility of other, unproved amounts of loss.

The district court varied upward, imposing a sentence of 36 months'

imprisonment—double the top of the calculated guidelines range.  In doing so, it

cited the severity of "the approximately 82 different instances in which

[Mr. Bullcoming] stole from his people." *Id.* at 45.  Its emphasis, however, was

on the need for deterrence, remarking that "it is my conclusion that the most

important statutory object of sentencing in this case, Mr. Bullcoming, is to make

an example of you.  It is just that simple." *Id.* at 46.

## II.    DISCUSSION

### A.    Alleged Breach of Plea Agreement

"Where the Government obtains a guilty plea which is predicated in any significant degree on a promise or agreement with the U.S. Attorney, such promise or agreement must be fulfilled to maintain the integrity of the plea." *United States v. Villa-Vazquez*, 536 F.3d 1189, 1196 (10th Cir. 2008) (internal quotation marks omitted). To interpret a plea agreement, we "look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea." *United States v. Trujillo*, 537 F.3d 1195, 1200 (10th Cir. 2008) (internal quotation marks omitted). Furthermore, "we rely on general contract principles and construe any ambiguities against the government as the drafter of the agreement." *Id.* (internal quotation marks omitted). And "[w]e evaluate the record as a whole to ascertain whether the government complied with its promise." *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007).

Because Mr. Bullcoming failed to argue in district court that the government had breached the plea agreement, we review for plain error. *See Puckett v. United States*, 129 S. Ct. 1423, 1428 (2009), *overruling in part United States v. Yanez-Rodriguez*, 555 F.3d 931, 939 & n.3 (10th Cir. 2009). Thus, he cannot prevail "unless he establishes that the district court committed error, the error was plain, and the error affected his substantial rights." *United States v. Dryden*, 563 F.3d 1168, 1170 (10th Cir. 2009). "Even then we possess discretion with respect to granting relief, depending on our assessment of whether the error

-9-

seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id.* (brackets and internal quotation marks omitted).

Mr. Bullcoming argues on appeal that the government breached the plea agreement in two respects. First, he complains that at the sentencing hearing the government presented the testimony of Ms. Hart-Whitecloud, who argued that he had failed to accept responsibility, even though the plea agreement stipulated that he would receive an acceptance-of-responsibility downward adjustment under the guidelines. Second, he states that the parties stipulated to the amount of loss, yet the government argued at sentencing "that the stipulated loss was only a fraction of the thefts." Aplt. Br. at 12.

Neither alleged breach constituted plain error entitling Mr. Bullcoming to relief. To begin with, he has not shown how Ms. Hart-Whitecloud's testimony breached the plea agreement. To be sure, the government stipulated to a reduction in Mr. Bullcoming's offense level for acceptance of responsibility, so it could well have been a breach had the government argued for an upward variance based on his failure to accept responsibility. *See Villa-Vazquez*, 536 F.3d at 1196–97. But Mr. Bullcoming has not shown that the government bore responsibility for Ms. Hart-Whitecloud's comments that he had not accepted responsibility. Victims have a right to be heard at sentencing, *see* 18 U.S.C. § 3771(a)(4), and the government cannot control what victims say to the court. Mr. Bullcoming has presented no evidence that the government could have

-10-

anticipated Ms. Hart-Whitecloud's statements regarding acceptance of responsibility, let alone that the government orchestrated the comments. Moreover, it appears that Ms. Hart-Whitecloud was referring only to Mr. Bullcoming's failure to accept responsibility for his tribal offenses, not the federal offenses. In short, Mr. Bullcoming has failed to show that the government clearly breached the plea agreement in this regard. We also observe that Mr. Bullcoming has failed to show that he was prejudiced by Ms. Hart-Whitecloud's statement regarding his failure to accept responsibility. The government made no mention of failure to accept responsibility when it argued for an upward variance, nor did the district court in explaining its sentence.

As for the government's comment that it "probably will never be able to prove the full amount of restitution that he ultimately should be entitled to pay," R., Vol. 4 at 29, we again question whether the comment breached the plea agreement. Although the government stipulated to a specific loss amount for restitution purposes (and Mr. Bullcoming does not complain about the district court's award of restitution), it did not similarly bind itself for offense-level purposes. The agreement states that the parties "expect to take, but are not limited to, the following positions at sentencing: . . . the total amount of loss that should be attributed to [Mr. Bullcoming] for guideline calculation purposes is $95,350.75 . . . ." *Id.*, Vol. 1 at 32. Mr. Bullcoming does not explain how the government's statement in support of a variance violates this provision. In any

event, Mr. Bullcoming has failed to show how he was prejudiced by the government's brief, and rather inarticulate, comment regarding uncalculated losses. The district court made no mention of the matter and made very clear that the overriding reason for its upward variance was to deter others.

Accordingly, we reject Mr. Bullcoming's claim that he is entitled to relief because of a breach of the plea agreement by the government.

**B.      Upward Variance**

Mr. Bullcoming also contends that the district court abused its discretion in varying upward to impose a sentence of 36 months' imprisonment—double that of the top of the applicable guidelines range. "We review the district court's variance from the advisory Guideline range through application of the 18 U.S.C. § 3553(a) factors for substantive reasonableness, utilizing the abuse-of-discretion standard." *Yanez-Rodriguez*, 555 F.3d at 945–46 (footnote omitted). Under that standard, a district court has "broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a)," *id.* at 946, which it abuses only if it "renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable," *id.* (internal quotation marks omitted). "We must consider the totality of the circumstances, including the extent of deviation from the sentencing Guideline, but we may not apply a presumption of unreasonableness." *Id.* We have reviewed the district court's explanation for the sentence it imposed and discern no abuse of discretion.

## III.  CONCLUSION

We AFFIRM Mr. Bullcoming's sentence.