**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 10, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

YVETTE MARIE SIERRA,

    Defendant - Appellant.

No. 21-2130
(D.C. No. 2:21-CR-00727-KWR-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

This matter is before the court on the government's motion to enforce the

appeal waiver in Yvette Marie Sierra's plea agreement pursuant to *United States v.*

*Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam), and 10th Cir. R.

27.3(a)(1)(d).  Exercising jurisdiction under 28 U.S.C. § 1291, we grant the motion

and dismiss the appeal.

Ms. Sierra pleaded guilty to conspiracy to transport illegal aliens, in violation

of 8 U.S.C. § 1324(a)(1)(A)(v)(I).  The plea agreement included a broad waiver of

appellate rights, including the right to appeal any sentence "at or under the maximum

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

statutory penalty authorized by law." Mot. to Enforce, Exh. 1 at 7. As pertinent here, the agreement provided a detailed explanation of the possible penalties and the parties' stipulations to an offense level of 12, a three-level enhancement for conspiring to transport more than six aliens, and downward adjustments for acceptance of responsibility and because Ms. Sierra was a minor participant in the conspiracy. Ms. Sierra acknowledged that the parties' stipulations were not binding on the district court and that whether to accept them was "a matter solely within the discretion of the Court after it has reviewed the presentence report [PSR]." *Id.* at 6. She also acknowledged that although she admitted to conspiring to transport only 13 aliens as the factual basis for her plea, the court could rely on facts in the presentence report to determine her sentence. Both by signing the written plea agreement and in her responses to the court's questions at the change of plea hearing, Ms. Sierra acknowledged that her plea was knowing and voluntary, and that she understood its consequences, including the possible sentences and the appeal waiver.

The PSR revealed additional facts about Ms. Sierra's participation in the conspiracy, including that she admitted to border patrol agents that at one point, there were close to 35 aliens staying in her home. It thus included the factual finding that she conspired to transport and harbor more than 25 undocumented aliens. As a result of that finding, the PSR's offense level computation tracked the parties' stipulations in the plea agreement except that it recommended a six-level increase because the offense involved transporting and harboring over 25 aliens, instead of the stipulated three-level enhancement for an offense involving between 6 and 24 aliens. After the

enhancement and stipulated downward adjustments, the PSR recommended a total offense level of 12, resulting in a guidelines range of 10 to 16 months' imprisonment.

Ms. Sierra did not file written objections to the PSR, and defense counsel told the court at the sentencing hearing that he had no objections to the PSR.[1]  The court adopted the PSR's factual findings and guidelines-range calculation.  The prosecutor then commented that Ms. Sierra "transported and housed a significant amount of illegal aliens," and asked the court to impose a low-end guidelines sentence based on "the number of illegal aliens" and "the way that presentence report reads."  Mot. to Enforce, Exh. 3 at 5.  Noting the finding in the PSR that Ms. Sierra "conspired with others to transport and house at least 25 undocumented aliens," the court sentenced her to 10 months in prison—the lowest sentence in the guideline-range.  *Id.*

Despite receiving a sentence well below the statutory ten-year maximum, *see* 8 U.S.C. § 1324(a)(1)(B)(i), Ms. Sierra filed a notice of appeal.  Her docketing statement indicates that she intends to argue that the prosecution breached the plea agreement and to challenge the reasonableness of her sentence.

---

[1] Contrary to Ms. Sierra's contention, she did not effectively object to the finding in the PSR by relying on her factual admission in the plea agreement during her interview with the Probation Officer who prepared the PSR.  *See* Fed. R. Crim. P. 32(f)(1) (providing that that a party who wants to object to a PSR "must state *in writing* any objections, including objections to material information [and] sentencing guideline ranges … contained in or omitted from the report" (emphasis added)); *United States v. Shinault*, 147 F.3d 1266, 1278 (10th Cir. 1998) ("Failure to object to a fact in a presentence report, or failure to object at the hearing, acts as an admission of fact." (internal quotation marks omitted)).

In response to the government's motion to enforce, Ms. Sierra argues that the appeal waiver is unenforceable because the government breached the plea agreement.[2]  Specifically, she contends the prosecutor breached the agreement by not urging the court to adopt the parties' stipulation for a three-level enhancement based on her admission in the plea agreement about the number of aliens involved, instead of the six-level enhancement supported by the factual finding in the PSR.

"[A]n appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement." *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008).  "General principles of contract law define the content and scope of the government's obligations under a plea agreement." *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007), *overruled on other grounds by Puckett v. United States*, 556 U.S. 129 (2009).  "We thus look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea." *Id*.  "We evaluate the record as a whole to ascertain whether the government complied with its promise." *Id*.

Ms. Sierra acknowledges that she did not object to the prosecutor's comments or otherwise raise her breach-of-plea-agreement argument the sentencing hearing.

---

[2] The heading of the response cites *Anders v. California*, 386 U.S. 738 (1967), but the breach-of-plea-agreement contention is not presented as only arguable, and counsel has not moved to withdraw. *See id.* at 744.  Accordingly, we will not treat the filing as an *Anders* response.

We thus review her argument for plain error. *See Puckett*, 556 U.S. at 133-34; *United States v. Bullcoming*, 579 F.3d 1200, 1205 (10th Cir. 2009).

The plain-error test requires the defendant to demonstrate (1) error, (2) that is plain, (3) that affects her substantial rights, and, if those first three prongs are met, (4) that the error seriously affects the fairness, integrity or public reputation of the judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732-36 (1993). The Court held in *Puckett* that, in a breach-of-plea-agreement case, to establish the third plain-error prong, the defendant must show that the error had a prejudicial effect on the sentence imposed. *See* 556 U.S. at 142 n.4. Ms. Sierra cannot meet any of these requirements.

First, the prosecutor's comments at the sentencing hearing did not breach the plea agreement, so Ms. Sierra cannot establish error, much less plain error. The government stipulated to a three-level enhancement, but nothing in the plea agreement required the prosecutor to argue for a three-level enhancement at the sentencing hearing despite facts in the PSR supporting a six-level enhancement. To the contrary, the agreement provides that "[a]part from the provisions in this plea agreement, the [government] reserve[s] the[] right[] to assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines and adjustments under the guidelines." Mot. to Enforce, Exh. 1, at 6. Moreover, the prosecutor did not argue that the court should adopt the PSR's recommendation for a six-level enhancement— he made his comment about imposing a sentence based on the "significant" number

of aliens involved and "the way that presentence report reads" *after* the court had already adopted the PSR's unobjected-to findings and recommended guidelines range. Mot. to Enforce, Exh. 3 at 5. Thus, his comments were not an attempt to avoid the government's stipulation.

Second, even if the prosecutor's comments somehow breached the plea agreement, Ms. Sierra cannot show that the error affected her substantial rights. By signing the plea agreement, she acknowledged not only that the parties' stipulations were not binding on the court but also that, regardless of the stipulations, the court could rely on the facts in the PSR in determining the appropriate guidelines range. Ms. Sierra maintains that the government's supposed breach of the plea agreement affected her substantial rights because "she was denied the benefit of her plea bargain, namely, the Government arguing for a sentence based on" the parties' stipulation to a three-level enhancement. Resp. at 4. "Had the Government lived up to the plea agreement," she argues, the court would have adopted "a sentencing range with a minimum of 4 months, instead of . . . 10 months," *id.*, and it would have sentenced her to 4 months instead of 10, *id.* at 5. But there is simply nothing in the record to support her speculation that had the government pushed for a three-level enhancement, the court would have ignored the information in the PSR that supported a six-level enhancement—information based on her admission to law enforcement officers—and imposed a shorter sentence.

Having rejected Ms. Sierra's contention that her appeal waiver is unenforceable based on the government's alleged breach of the plea agreement, we

6

must rule on the government's motion to enforce. In doing so, we consider whether the appeal falls within the scope of the waiver, whether the waiver was knowing and voluntary, and whether enforcing it would result in a miscarriage of justice. *See Hahn*, 359 F.3d at 1325. Based on our review of the written plea agreement and transcript of the change of plea hearing, we conclude that the *Hahn* factors have been met, and Ms. Sierra does not contend otherwise. Accordingly, we grant the government's motion to enforce the appellate waiver in the plea agreement, and we dismiss this appeal.

Entered for the Court
Per Curiam
